ALLEN & REED, INC. *vs.* WALTER A. PRESBREY *et al.*

MARCH 5, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

STEARNS, J. This is a bill in equity brought by complainant corporation to restrain the police commissioners of Providence from enforcing certain sections of the munici-

pal traffic ordinances, from maintaining traffic signs on the sidewalks adjacent to complainant's premises reading "60 Minute Parking—Police Dept." and praying that said ordinances be declared void and unconstitutional. After a hearing a final decree was entered in the Superior Court enjoining the respondents from placing such signs on the sidewalks and denying any other relief to complainant. The cause is in this court on the appeals of the complainant and of the respondents from this decree.

Complainant is the owner in fee simple of a lot of land, with the building thereon, bounded northerly by Clifford street on which it measures 142 feet; northerly by Orange street, 18 feet; southeasterly by Dyer street, 159 feet; and southwesterly by Dorrance street, 147 feet. The lot is triangular in shape and includes all of the land at this point between the streets mentioned; the building covers the entire lot to the line of the sidewalks.

Complainant sells pipe and steam-fitting supplies; in receiving and delivering merchandise the use of trucks is required.

The city ordinances relative to streets, sidewalks and highways, and vehicles and travel therein, were amended in March, 1927, and complainant's premises were then included in the "congested area," so-called. In December the respondents, in accordance with the practice in other localities in the "congested area," placed signs on the sidewalks of Dorrance and Dyer streets adjacent to the complainant's premises, as follows: "60 Minute Parking—Police Dept."; "No Parking" signs were placed on the north side of complainant's premises, where the bulky materials were usually handled.

Complainant avers that many people have parked automobiles at the curb on Dorrance and Dyer streets under a claim of right to do so because of the signs, and thereby have prevented complainant and its customers from having proper access to its premises at all times, and it has thus been deprived of its vested property rights.

The particular sections objected to are as follows:

"34. (a) All that territory bounded as follows, shall be termed for the purpose of this ordinance 'The congested area'."

"(b) Between the hours of 8 o'clock A. M. and 6:15 o'clock P. M., except Sundays, and subject to any further restrictions contained herein, no vehicle shall remain standing for any one consecutive period of time longer than one hour, within the 'congested area' or upon any of the following streets or highways or parts thereof."

The claim is that the ordinances and the signs are an invitation to the public to park automobiles for sixty minutes.

The first question is, what is the real character and purpose of the ordinances? This can only be decided by a consideration of the ordinances as a whole in the light of past and present conditions in the "congested area."

Section 16 provides that the driver of a vehicle waiting at the curb shall promptly give place to a vehicle about to load or deliver merchandise; Section 21, no vehicle shall stop or stand in any place where the use of any driveway will be obstructed; Section 24, no driver of a vehicle shall refuse or neglect to move the same when directed by a police officer; Section 29, every driver having charge of a vehicle on a street shall remove the same to another place on such street or to some other street whenever directed so to do by any police officer; Section 30, any police officer may remove any vehicle left upon the street not in the apparent charge of any driver or in violation of any of the ordinances to another place or to the city yard, and there leave the same; Section 31, no person shall store any vehicle or permit the same to remain unemployed and out of use in any street except temporarily in case of emergency. Section 33 further provides for the purpose of restricting the standing of vehicles in front of buildings where unusual loading or loading of merchandise exists, the police department by resolution of the city council may be authorized to place

proper signs designating "No Parking" spaces at such locations, and when such signs are so placed no vehicle shall remain standing in any such space at any time. Section 49 provides a penalty of a fine for any violation of the ordinances.

Before the inclusion of complainant's premises within the congested area there was no limit imposed by city ordinance on the stopping or parking of vehicles in the adjacent streets. The ordinance now restricts the privilege of stopping on these and other highways. It is impossible to print the whole ordinance on the signs; if the public understands these signs to be an invitation to park for the maximum time printed thereon, that is because of a misinterpretation of the ordinance. The purport of the ordinance and the traffic signs is to announce that the city, in the exercise of its power to regulate traffic, will not punish stopping for a time not longer than the maximum limit. A parking ordinance is nothing more than a police regulation which settles the matter between the owner of the automobile and the city. *Lowell* v. *Pendleton Auto. Co.*, 261 Pac. 415 (Ore.). By the general rules of law the public has an easement upon the land lying within the lines of the highway. *Tucker* v. *Eldred*, 6 R. I. 404; *R. I. Hos. Trs. Co.* v. *Hayden*, 20 R. I. 544. This right and easement of the public is primarily to a free passage on the public streets and sidewalks; the right to stop when the occasion demands is generally an incident of the right to travel. *Lowell* v. *Pendleton Auto Co.*, *supra; Park Hotel* v. *Ketchum*, 199 N. W. 219 (Wisc.).

The following excerpt from *Cater* v. *Northwestern Telephone Exchange Co.*, 60 Minn. 539 (p. 543) is an excellent summary of the development of this easement: "The question, then, is, what is the nature and extent of the public easement in a highway? If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway

was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals. . . . And thus the methods of using public highways expanded with the growth of civilization, until today our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those then in use. Another proposition, which we believe to be sound, is that the public easement in a highway is not limited to travel or transportation of persons or property in movable vehicles. This is, doubtless, the principal and most necessary use of highways, and in a less advanced state of society was the only known use, as the etymology of the word 'way' indicates. And the courts, which, as a rule, are exceedingly conservative in following old definitions, have often seemed inclined to adhere to this original conception of the purpose of a highway, and to exclude every form of use that does not strictly come within it. But it is now universally conceded that urban highways may be used for constructing sewers and laying pipes for the transmission of gas, water, and the like for public use. Some courts put this on the ground that these uses are merely incidental to and in aid of travel on the streets. Other courts put it on the ground that such uses are contemplated when the easement in urban ways is acquired, but not in the case of rural highways. But it seems to us that neither of these reasons is either correct or satisfactory. The uses referred to of urban streets are not

in aid of travel, but are themselves independent and primary uses, although all within the general purpose for which highways·are designed. Neither can a distinction between urban and rural ways be sustained on the ground that such uses were contemplated when the public easement was acquired in the former but not when the easement was acquired in the latter. As a matter of fact, most of these uses were unknown when the public easement was acquired in many of the streets in the older cities. Indeed, many of what are now urban highways were merely country roads when the public acquired its easement in them, and doubtless many highways that are now merely country roads will in time become urban streets. . . .

"It seems to us that a limitation of the public easement in highways to travel and the transportation of persons and property in movable vehicles is too narrow. In our judgment, public highways, whether urban or rural, are designed as avenues of communication; and, if the original conception of a highway was limited to travel and transportation of property in movable vehicles, it was because these were the only modes of communication then known; that as civilization advances, and new and improved methods of communication and transportation are developed, these are all in aid of and within the general purpose for which highways are designed. Whether it be travel, the transportation of persons and property, or the transmission of intelligence, and whether accomplished by old methods or by new ones, they are all included within the public 'highway easement,' and impose no additional servitude on the land, provided they are not inconsistent with the reasonably safe and practical use of the highway in other and usual and necessary modes, and provided they do not unreasonably impair the special easements of abutting owners in the street for purposes of access, light, and air. It is. impracticable, as well as dangerous, to attempt to lay down, except in this general form, any rule or test of universal application as to what is or what is not a legitimate 'street or highway use.'

Courts have often attempted to do so, but have always been compelled by the logic of events to shift their ground. The only safe way is to keep in mind the general purpose of highways, and adopt a gradual process of inclusion and exclusion as cases arise."

An abutting owner has the same right to the use of streets that the public has, and in addition has other rights special to himself, including the right of ingress and egress. This right of passage is a property right and, although subject to the police power of the State, it cannot unreasonably be interfered with. The public has a right to stop a vehicle on the street at the curb unless such action is forbidden in a particular locality by the State or City; this right of stopping or parking may properly be defined and limited by a municipality in the exercise of the police power delegated by the State. The fact is the use of the automobile has increased so suddenly and enormously that the problem of traffic control has not yet been solved. The time may soon come when it will be necessary to prohibit any but a momentary stop in city streets. The decision of the necessity of such or other regulations in the first instance should be left to the local authorities who are familiar with the local situation. The courts are in no position to formulate traffic regulations for different communities. If such regulations are unreasonable the courts can and will interfere and protect the rights of the public and of individuals. The traffic ordinance in question, in our opinion, is a sincere attempt to regulate street traffic with due regard to the rights of travelers, of merchants and business men, and the owners of real estate. It is not an unreasonable or partial exercise of the police power and hence is not a taking of or the deprivation of property of the complainant in violation of either the State or Federal constitution. Although complainant does not have so easy and free access on all sides of its property as it had in years gone by, it still has reasonable and proper access; the diminution of access is made necessary by the growth of the city; the rights of the public

in the highway now require some curtailment of the unlimited right of access of the abutting owner. Complainant still has the use of the entire length of the north side of its land for loading and unloading trucks. As it has refused to apply to the city council for an enlargement of the "No Parking" space, as provided for by Section 33, a doubt naturally arises as to the extent of the inconvenience caused by the ordinances. It is not to be presumed that fair consideration would be denied by the city council to any reasonable request for increased freedom of access.

For the reasons stated we hold that the ordinances are not invalid and that the placing of the signs objected to on the sidewalk was lawful.

The appeal of the complainant is denied and dismissed.

The appeal of the respondents is sustained; the decree appealed from is reversed and the cause is remanded to the Superior Court with direction to enter a final decree dismissing the bill.

*Russell W. Richmond*, for complainant.

*Elmer S. Chace, City Solicitor, Walter Adler, William H. S. Callahan, Assistant City Solicitors*, for respondents.