BENJAMIN NEWMAN *et al. vs.* MAYOR OF THE CITY OF NEWPORT *et al.*

JANUARY 21, 1948.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

CAPOTOSTO, J. This is a petition for a writ of certiorari brought by Benjamin Newman and Ida Newman, his wife, and the Sun Oil Company against the mayor and the board of aldermen of the city of Newport and Harry R. Hamilton, in his capacity as commissioner of public works of that city, to review the action of the respondents in denying to the

petitioners access to a gasoline station which was to be erected on land owned by the Newmans in Newport.

The Newman land, which abuts on three streets, has a frontage of about 83 feet on both Spring and Hozier streets, and of approximately 24 feet on Court House street. All these streets are curbed. A curb cut, 14 feet wide, on Court House street is the only one in the entire curbing around this land, which cut is for access to an old barn facing on that street. The Newmans, by written contract, agreed to sell the premises in question to the Sun Oil Company provided, among other things, that curb cut permits for the necessary approaches to the contemplated gasoline station were obtained.

At the time of the application under consideration, a zoning ordinance divided the city of Newport into districts, among which were "Business District Uses." The Newman property was in a business district zone, which permitted the use of land in that area for a gasoline station. The right of the petitioners here to use the land for that purpose is therefore undisputed.

There was also then in force an ordinance entitled "An Ordinance In Amendment Of Chapter 12-13 Ordinances Of The City Of Newport, Revision Of 1945, Entitled 'Streets And Highways' " commonly known as the curb cut ordinance, hereinafter called the ordinance. In so far as pertinent, this ordinance provides in substance that a person owning land abutting upon any public street or highway in the city of Newport, who wants an entrance or driveway over a sidewalk adjoining his land, must make application to the commissioner of public works and file a plat with him showing the particulars. Upon such application, the commissioner is required to advertise the petition three times in one week in a local newspaper and to give written or oral notice to owners, lessees or tenants of land within 500 feet of the proposed entrance or driveway, so that all remonstrants might have a fair opportunity

to make their objections at the time and place specified in the notices for hearing on the application.

The ordinance further provides that within ten days of the hearing the commissioner shall "examine into the necessity for said entrance or driveway, and in so doing shall take into consideration the public welfare, traffic hazards, dangers to pedestrians and the public generally, and any and all matters pertaining thereto, and shall act upon and approve or disapprove said application. If the Commissioner disapproves the application, he shall notify the applicant of his action . . . *provided, however,* that the applicant shall have the right to appeal from the action of the Commissioner to the Board of Aldermen, within ten days thereafter, who shall affirm or reverse the action of the Commissioner, without amendment or alteration."

In compliance with the ordinance the petitioners filed an application asking for approaches to the Newman land as shown on a plat attached to the application, or, in the alternative, "for other ordinary entrances, driveways or approaches to the abutting land above described so that reasonable and lawful access to said land may be had for the purpose of serving and operating the proposed gasoline filling station . . . ." The plat shows two proposed approaches on Spring street, two on Hozier street and one on Court House street, all approaches being about 18 or 19 feet wide. This plat further shows that all three streets are one-way streets for vehicular traffic. On Court House street from Hozier street traffic moves in a northwesterly direction; on Hozier street it moves easterly into Spring street, and from thence it moves northerly on Spring street. An alternative plat indicating alleged minimum entrance requirements was also filed with the application. This plat shows two approaches on Spring street and one on Court House street, all of these approaches being about 24 feet wide. It eliminates the two entrances on Hozier street, upon which there is a bus terminal opposite the Newman land.

Pursuant to the notices given by the commissioner, a hearing was held by him, at which time the petitioners were permitted full opportunity to present their case and to cross-examine persons who appeared in opposition to the application. Later the commissioner rendered a decision in the form of a letter, dated March 29, 1947, to petitioners' attorney disapproving the application.

In order to properly understand the position taken by the commissioner in this matter we deem it necessary to quote freely from that letter. After referring to the width of the streets and the vehicular traffic thereon, he says: "The area is heavily congested now and will be even more so when part of the fleet, which is to be based in Newport will be here in full force and additional buses of the Shortline will swing through this area." In setting out the nature of the remonstrances he mentioned the fact that "one of the gasoline station owners indicated that if these driveways were permitted and an accident should happen it would create a hardship on all gasoline station owners in Newport, since public opinion would turn against all of them."

The letter then proceeds as follows: "I do not feel that I am in any way depriving the applicants of private property without due process of law or without just compensation under the constitutions of either the State of Rhode Island or of the United States. . . . It is not a question of taking property from the applicants but of refusing them the right to have driveways over *the sidewalks belonging to the city* so that automobiles may be driven on to their land. The property may be used for any commercial purpose *which would not require such driveways*. Furthermore, there can be no claim that reasonable and lawful access is denied to the land, because . . . there is a *small driveway now existing* leading from Court House Street on to the property in question. The applicants, Benjamin Newman and Ida Newman, can use the property for its *present uses* without any additional driveways and the Sun Oil Company

is merely a prospective purchaser of the land which desires to erect a gasoline station thereon in the future." (italics ours)

With reference to petitioners' request that if the commissioner disapproved the location of the driveways according to the original plat, then they applied for such other reasonable and lawful access to the land as he might grant for its use as a gasoline station, the commissioner's letter says: "There is nothing in the ordinance in question which requires or permits me to pass on such an alternative application, and I do not think that the proper function of the Commissioner of Public Works is to help an applicant draw plans for driveways which would be acceptable."

The letter concludes as follows: "In as much as this is the second petition that has been filed for this same parcel of land, and further petitions will cause expense and inconvenience both to the applicants and to the City I, therefore, am willing to state that in my opinion the piece of land is so situated that no possible arrangements of a driveway or driveways for commercial purposes could be approved by me, as I think that any such arrangement of driveways would constitute a traffic hazard and a danger to pedestrians and the public generally, in view of the location, traffic, and the dimensions of the streets."

Within the time prescribed by the ordinance the petitioners appealed from the decision of the commissioner to the board of aldermen, which thereupon fixed a time for hearing the appeal. At such time the petitioners were again heard in support of their application, but the board affirmed the decision of the commissioner in all particulars without comment or reservation whatsoever. Therefore the board's position also manifestly was that the Newmans were not entitled to any further approaches to their land if it was to be used for business purposes. The present proceedings followed.

The petitioners make two main contentions. First, that the ordinance is unconstitutional in that it violates article

I, sec. 16 of the constitution of this state, which provides that private property shall not be taken for public uses, without just compensation; and that it violates article XIV of the amendments of the Constitution of the United States, commonly known as the due process and equal protection clauses of that Constitution. Secondly, that if the ordinance is constitutional, then the respondents acted in an arbitrary and capricious manner in the exercise of a semijudicial function.

■ Before considering these contentions, certain preliminary observations are desirable. The respondents urge that because the Sun Oil Company is a mere conditional vendee it has no property right which enables it to question the constitutionality of the ordinance, and that the Newmans, who "have a clear legal interest in the property," are not aggrieved because they themselves do not intend to build a gasoline station. They then argue that since the Newmans already have a driveway to their property, they do not need any additional driveways to serve the structures presently thereon. This argument overlooks the fact that, in the absence of reasonable restrictions duly imposed by law, an owner of land is entitled to use or sell his land for any lawful purpose. The adequacy of ingress and egress is an important element in fixing the valuation of land that is adapted and intended to be used for a lawful purpose. See *Johnston* v. *Old Colony R.R.*, 18 R. I. 642. It might be a different question if the Sun Oil Company were the sole petitioner in the instant case. See *Sun Oil Co.* v. *Macauley*, 72 R. I. 206. But this is not the case, as here the owners of the land have joined with that company in bringing this petition. As such owners they have a clear legal interest in the land and, therefore, in the absence of any other adequate remedy, they are entitled in these circumstances to have a review of the action of the municipal authorities by certiorari. *Newell* v. *Franklin*, 30 R. I. 258.

■ In this state, in the absence of special circumstances, and none appear in the instant case, the owner of land abutting on a highway owns the fee to the middle line of the highway. See *Healey* v. *Babbitt,* 14 R. I. 533. As a general rule, by the legal establishment of a public highway, the public acquires only an easement in such highway, the fee in the soil remaining in the owners of adjoining lands. *Rounds* v. *Mumford,* 2 R. I. 154, 160. We refer to these well-established principles in view of the fact that the commissioner in the instant case seems to believe that the fee in land for highways is in the muncipality and that he therefore had the right to deny all reasonable access for business purposes to the abutting land.

■ We will now turn to a consideration of the constitutional question raised by petitioners. A brief and general discussion of the following points will be of assistance: first, the right of an abutting property owner of access from the highway; and, secondly, the intended purpose of the ordinance. The right of ingress to and egress from a highway to one's land is not a mere privilege; it is a property right appurtenant to the land. Subject to reasonable regulation in the public interests, such a right cannot be taken away or materially impaired even under statutory authority without just compensation. *Allen & Reed, Inc.* v. *Presbrey,* 50 R. I. 53. We see no need for further citation of individual cases on this point as many of them, to the same effect as the *Allen & Reed, Inc.* case, are to be found in the annotation "Power to regulate or prohibit driveways across sidewalks", 22 A.L.R. 942; 66 A.L.R. 1052. To the same effect see 39 C.J.S. 1079, §141; 3 Dillon Municipal Corporations (5th ed.) 1607, §1016; 2 Elliott, Roads and Streets (4th ed.) 1152, §882, 1168, §891.

Pedestrians on the highways are entitled to reasonable protection from the usual and known dangers due to vehicular traffic. In the exercise of its police power the state, either directly or by delegation of such power to a municipality, may enact or authorize the enactment of laws to

attain this end, provided that private property is not in effect confiscated under the guise of regulation. An owner of property in a populous city or growing community is bound to appreciate that, for the common welfare and public safety, the use of his land 'may be restricted by reasonable regulation. But, although safety in the use of highways is a matter of serious public concern, yet a municipality cannot disregard the property rights of an owner of land abutting on a highway to the extent of denying him reasonable access to his property for a permitted and lawful purpose.

■■   Statutory authority for the city of Newport to adopt the ordinance under consideration is found in general laws 1938, chapter 333, §4, and chap. 348, §1, the latter of which grants to a municipality in specific terms "the power to order sidewalks, including curbing of stone or other material . . . and may make ordinances and regulations relative to the altering or repairing thereof . . . ." This is a delegation of the police power of the state to a municipality for the purpose and to the extent prescribed by the statute. While such power was expressly granted in general terms, the mode of its exercise being left to the discretion of the municipality, yet, as to ordinances passed under such a grant of power, the courts will consider their reasonableness and pass directly upon their validity. In considering the constitutionality of the ordinance here in question this court will apply to its provisions the tests which are applicable in determining the constitutionality of a statute having a like purpose. *Fritz* v. *Presbrey,* 44 R. I. 207.

■   A statute is presumed to be constitutional, and the burden of proving that it is unconstitutional rests with the party raising the question; furthermore, he must prove it beyond a reasonable doubt. In other words, a statute should be sustained unless its unconstitutionality is clear beyond a reasonable doubt. *Gorham* v. *Robinson,*

57 R. I. 1, 7; *State* v. *Smith,* 56 R. I. 168, 183; *Fritz* v. *Presbrey, supra.*

■  The petitioners concede that the curbing of highways presents a proper subject for the exercise of the police power by statute, or, through delegation, by ordinance. But they attack the constitutionality of the ordinance in question on various grounds, the most important of which we will now consider. Their first ground is that since the ordinance does not prescribe any definite rule for the guidance of the commissioner, he is therefore vested with arbitrary discretion to grant or deny at will any or all access to property abutting on the highways, and that therefore the ordinance is unconstitutional for the reason that it infringes on the due process clause of the Federal Constitution. If such were the clear intent of the ordinance we would not hesitate to declare it unconstitutional. In our judgment petitioners' interpretation of the ordinance is so strained as to be unreasonable.

Granting that the ordinance may be inartistically drawn, we find nothing in its language that gives to the commissioner the power to exercise arbitrary and absolute discretion in effecting the intended purpose, that is, the safeguarding of pedestrians from the danger of vehicular traffic. It is true that the ordinance expresses itself in general terms, but this is unavoidable because of the varying situations that may arise for determination. Unless one can say that every application for a curb cut will be the same or substantially similar to every other such application, it is impracticable, if not impossible, to prescribe specific rules for the commissioner's guidance in carrying out the purpose of the ordinance with fairness to a landowner and to the public. Necessity requires that each application be determined on its own particular facts in order that conflicting rights be equitably adjusted. To attain this end the ordinance confers upon the commissioner merely the power to exercise *reasonable* discretion in his decision on each application. This provides a basis for

like treatment in the case of every applicant for a curb cut. When viewed in this light, the ground of unconstitutionality under consideration is without merit.

■ The petitioners also contend that the ordinance is unconstitutional because it does not provide an adequate review of the commissioner's decision. They in substance argue that because the board of aldermen can only affirm or reverse the decision of the commissioner, without power of amendment, the ordinance fails to provide an adequate review of the decision and, therefore, an arbitrary and capricious decision of the commissioner may remain unchanged. This argument is unsound. The ordinance expressly gives the board of aldermen power to "reverse" the decision of the commissioner, and it is to be presumed that public servants in the faithful discharge of their duty would ordinarily reverse an arbitrary or capricious decision of the commissioner. The case of *R. G. Lydy, Inc.* v. *City of Chicago,* 356 Ill. 230, which is the only authority that the petitioners cite on this point, is clearly distinguishable from the instant case in that there the ordinance provided for no appeal to the city council or any other body in case the decision of the commissioner was against the applicant. Whether the ordinance before us should have empowered the board of aldermen not only to affirm or reverse but also to amend the decision of the commissioner is a legislative question and, therefore, not for us to determine.

Petitioners next contend that the ordinance is unconstitutional because it conflicts with and makes void the city's zoning ordinance. The language of the ordinance under discussion warrants no such conclusion. The two ordinances are completely independent of each other and are intended to serve entirely different purposes. The zoning ordinance regulates the use of property, while the curb cut ordinance, which in substance is a traffic regulation, seeks to attain a reasonable adjustment of any conflict which may arise between the respective rights

of an owner of land abutting on a highway and of the public in and over the sidewalk.

The constitutionality of the ordinance is further questioned on the ground that by its terms it does not apply to existing driveways and therefore gives owners and occupants of existing business properties an unfair economic advantage, and denies to petitioners the equal protection of the laws. The mere statement of this proposition shows that it merits little consideration. We are not concerned with the economic advantage that business places existing at the time of the passage of the ordinance may have derived from its enactment.

Petitioners further contend that the ordinance is unconstitutional as it is unreasonable, in that it does not authorize the respondents to grant reasonable and lawful access, but restricts them to the exact plat filed with the application and requires the petitioners to file an infinite number of applications with alternative plats in the hope that some application might suit the "whim" of the respondents. We find this contention without merit for two reasons. First, as we have already stated, the ordinance does not vest in the commissioner an arbitrary discretion to grant or deny curb cuts. It vests in him only the power to exercise a sound or reasonable discretion in the determination of the question of where and how a curb cut shall be made. See *Anzalone* v. *Metropolitan District Comm'n*, 257 Mass. 32. The ordinance in no way implies that the rights of applicants for curb cuts shall be subject to the "whim" of the commissioner. The contention under consideration is not a valid argument upon which to base the claim that the ordinance is unconstitutional.

Petitioners' final contention is that the ordinance is unconstitutional because, in providing that "only" the remonstrants are entitled to be heard, they are denied the equal protection of the laws. Here we find a clear distortion of the language of the ordinance. That language does say that "remonstrants are entitled to be heard" before a curb

cut application shall be granted, but it does not say, either expressly or by implication, that "only" they shall be heard. There is no restriction in the ordinance to prevent an applicant from freely and fully presenting his case. Furthermore, in contradiction of the proposition that they now advance, the petitioners do not deny that they had a full opportunity to be heard by both the commissioner and the board of aldermen.

We find, therefore, that the curb cut ordinance hereinbefore specifically identified, as construed by us, is not in violation of any of the provisions of the federal or state constitutions referred to by the petitioners.

We will now consider petitioners' second main contention, namely, that if the ordinance is constitutional, then the respondents acted in an arbitrary and capricious manner in the exercise of a semijudicial function. The commissioner's decision of March 29, 1947, which we have set out in considerable detail earlier in this opinion, is controlling on this point. It is apparent from his decision that the commissioner believed that an abutter's right to use property for a lawful purpose extended only to the property line, and that beyond such point the ordinance gave the commissioner power to allow or deny any and all curb cuts which, in his opinion, increased the danger from vehicular traffic to the public on the sidewalks, notwithstanding the fact that if such decision was adverse to an abutting property owner it would result in his being denied reasonable access to his land for an intended and lawful use. This was a basic misconception of the correlative rights of the public to use the sidewalks for travel and of the abutting landowner to have reasonable access to his property for use in a manner permitted by law.

As we have already indicated, the manifest intention of the ordinance was to regulate curb cuts so that they might not be promiscuously made to the detriment of the safe use of the sidewalk for travel and of the safety of traffic on

the street. It gave to the commissioner a supervisory power over the making of such cuts so that conflicting public and private rights might be fairly adjusted by governmental control and regulation. Reasonable regulation of access and not the prohibition thereof, however, was the extent of that delegated power under the ordinance.

The commissioner's decision amounts, in substance, to a denial of all access to the Newman land for use as a gasoline station, or for any other commercial and permitted use requiring reasonable curb cuts. In effect it limits the Newmans to the use of their land in substantially the same manner in which it now stands. It is obvious that the small existing driveway leading from Court House street to an old barn now on that land is clearly inadequate for the reasonable and lawful use of that land. Such a decision plainly transcends the bounds of reasonable regulation.

In this connection the closing paragraph in the commissioner's decision is of special significance, as he there clearly expresses the determination to disapprove any "possible arrangements of a driveway or driveways for commercial purposes" over sidewalks adjoining the Newman land. This determination is plainly the exercise of a power to prohibit, not to regulate. The exercise of such power does not indicate sound discretion in dealing with the property right of reasonable access that petitioners Newman, as the owners of land abutting on a highway, are entitled to under the law.

It is our opinion that in the circumstances the commissioner's decision was arbitrary and illegal. The record of the decision of the commissioner of public works and the approval thereof by the board of aldermen denying petitioners' application is therefore quashed.

*Sheffield & Harvey, W. Ward Harvey,* for petitioners.

*Alexander G. Teitz,* City Solicitor, for respondents.