77 N.J. Super. 556 (1963)
187 A.2d 201
TUBULAR SERVICE CORPORATION, A NEW YORK CORPORATION, PLAINTIFF-APPELLANT,
v.
COMMISSIONER OF THE STATE HIGHWAY DEPARTMENT OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1962.
Decided January 3, 1963.
*558 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Conrad W. Krafte argued the cause for appellant (Mr. Sheldon M. Liebowitz, attorney).
Mr. Theodore I. Botter, First Assistant Attorney General, argued the cause for respondent (Mr. Arthur J. Sills. Attorney General of New Jersey, attorney; Mr. Paul G. Levy, Law Assistant, on the brief).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This appeal is from the grant of summary judgment in favor of the defendant as against plaintiff's complaint, first count, demanding condemnation by the State of its property on the ground of alleged deprivation of its use by the State Highway Department in the course of regulation of traffic on Tonnele Avenue, North Bergen, whereon the property abuts. The second and third counts of the complaint, seeking damages apart from condemnation, have been abandoned.
From the complaint, affidavits submitted on the motion, and concessions of fact at the arguments below and here, the following substantially undisputed facts emerge, either directly or by fair inference. Plaintiff owns a commercial structure on a plot of land approximately 85 feet wide and 290 feet in depth on the west side of Tonnele Avenue, a very heavily-trafficked, four-lane state highway in Hudson County. The land abuts a railroad right-of-way at its rear boundary. We were told at argument that the building runs almost the length of the lot. The front entrance of the structure is situated 13 feet from the curb line of the street. Plaintiff is in the business of buying and selling tubular steel products. Because of their length, the steel rolls delivered to its plant *559 can be transported there only by trailer trucks. Prior to defendant's recent construction on Tonnele Avenue of the center highway barrier over which this controversy has arisen, plaintiff customarily effected access to its premises for the trailer trucks, if they were approaching on the southbound lanes of the highway, by either backing them or driving them directly into the building through its central entrance door. Because of the proximity of the front door to the curb line, however, and the limitations inherent in the width of the highway (its center line is about 37 feet from the front door, or about 24 feet from the curb line), these entrance maneuvers entailed a temporary traversal of the wrong (easterly or northbound) side of the highway. We gather that there was no problem as to deliveries coming from the south as an ordinary left turn would bring the vehicles directly into the plant.
After careful engineering study and considerable public demand based upon hazardous traffic conditions on this highway, the State Highway Department undertook a program for its improvement through resurfacing, center barrier curbs and "turn arounds" over a distance of 6.189 miles, at a cost of almost $850,000, completing it July 12, 1961. The center barrier divider, which runs along the highway in front of plaintiff's property, is of a type successfully employed by the Department on other state highways. It effects a substantial reduction of accidents. As a result of the barrier, no vehicles approaching plaintiff's property from the south can effect entrance, as they are physically barred from a left turn onto the property, while trailer trucks coming from the north are foreclosed from ingress into the building because the physical conditions on plaintiff's property described above, coupled with the present inability to swing over to the easterly or northbound lanes of the highway, make impossible the technique of entry customarily employed by these elongated vehicles before the barrier was constructed.
Plaintiff concedes the lawfulness and reasonableness of the highway structure built by defendant as a matter of the State's police power to control highway traffic in the interests *560 of public convenience and safety. Its position nevertheless is that when such an obstruction prevents essential vehicular ingress to its premises the State has in effect taken its property and must compensate it therefor under the constitutional mandate that "Private property shall not be taken for public use without just compensation." N.J. Const., Art. I, par. 20.
Plaintiff does not complain of its present inability to enter the property from a southerly approach, or as to the necessity that vehicles leaving the plant proceed only in a southbound direction on Tonnele Avenue, conceding that mere "circuity of route" in coming from or going to the property as a result of center barriers is not actionable against the public authorities where, as here, the traffic control devices have been lawfully instituted in reasonable effectuation of safety objectives. See Annotation, 73 A.L.R.2d 689, 692-698 (1960). Its grievance is simply that it can no longer get the trailer trucks onto its property at all because of the barrier. As a result, it has had to obtain a license to unload the vehicles on the property of a neighboring landowner, who will not sell his land to it. Under the existing arrangement there is substantial added time and labor in handling the merchandise over what was involved previously. Thus, plaintiff's argument goes, the State has taken its property in that it has deprived it of an essential element of its commercial utility  access from the highway by trailer truck.
Judge Artaserse ruled for the Law Division against the plaintiff, holding that notwithstanding the barrier plaintiff retained "reasonable means of ingress and egress" and that it was not entitled to compel condemnation proceedings because "the State has a right to do what it did" and plaintiff's "right is subservient to the right of the State." He also found the complaint barred by limitations. R.R. 4:88-15 (a).
Plaintiff makes the initial contention that it was improper for the trial judge to grant summary judgment since in so doing he was resolving a disputed issue of fact, i.e., *561 whether the barrier constituted a substantial impairment of its right of ingress and egress. To the extent that factual conclusions from undisputed operative facts may be regarded as determinations of issues of fact as distinguished from law, plaintiff may in a technical sense be correct in asserting that the trial court here decided an issue of fact. But see the distinction between conclusions to be drawn from facts and the facts themselves, in the ordinary connotation, made in Kryscnski v. Shenkin, 53 N.J. Super. 590, 597 (App. Div. 1959), certification denied 29 N.J. 465 (1959), involving the question whether a particular zoning variance would be a "substantial detriment" to the public good, etc., contrary to the statute, an issue there held properly resolved by grant of summary judgment. We think the instant situation is analogous, provided, as we conclude is here the case, there is only one reasonably justifiable conclusion on the law and the operative facts as to whether the impairment of plaintiff's access is of such kind and degree, as, under the circumstances, compels the State to take and pay for its property
We thus proceed to the merits.
One might well dispose of the issue on the ground that plaintiff's case is premised upon interference with its previous unlawful practice of bringing its inbound trailer trucks, approaching on the westerly highway lanes, over onto the easterly or northbound lanes of the highway in effecting the angle of approach necessary to maneuver the vehicles into its building. N.J.S.A. 39:4-67 provides, inter alia, that "[n]o vehicle * * * shall be permitted by the owner or driver thereof to so occupy a street as to interfere with or interrupt the passage of other * * * vehicles." R.S. 39:4-56 states that "[n]o person shall drive or conduct a vehicle in such condition, so constructed or so loaded, as to be likely to cause delay in traffic or accident * * *." Both of these provisions were, in our view, necessarily violated continuously or frequently on this busy highway by the practices of the trailer trucks described above in effecting entry into plaintiff's property prior to erection of the barrier. It *562 seems clear that where the action of the State complained of as impairing highway access to private property does not interfere with lawful means of access but only prevents vehicular access effected in a manner necessarily violative of reasonable highway safety statutes, no claim of compensable taking can be founded thereon. Cf. 1 Orgel, Valuation under Eminent Domain (2d ed. 1953), § 33, p. 162; 4 Nichols on Eminent Domain (3d ed. 1962), § 12.3143, p. 187. Compare Port of New York Authority v. Howell, 59 N.J. Super. 343, 347 (Law Div. 1960), affirmed 68 N.J. Super. 559 (App. Div. 1961), certification denied 36 N.J. 144 (1961).
However, we prefer to rest our disposition of this appeal on the broader ground that, even apart from the factor of plaintiff's previous violation of the traffic code, the alleged interference with its highway access is not, in these circumstances, such impairment of ingress as amounts to a taking of its property calling for institution of condemnation proceedings and attendant compensation.
We reaffirm our recent declaration in Mueller v. N.J. Highway Authority, 59 N.J. Super. 583, 589 (App. Div. 1960), that "a pre-existing easement of access to and from a public highway, possessed by an owner of land abutting on such highway, constitutes a right of property of which he cannot be deprived without just compensation * * *." See also Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119 (1956). Questions have frequently arisen in this State as to whether that principle is invocable where the owner's access is impaired as a result of a lawful change of grade of the highway on which the property abuts. The apparent status of the New Jersey decisions is that in such case the owner's injury is damnum absque injuria in the absence of a statute authorizing damages, and the State cites such cases as apposite here. Benton & Holden, Inc. v. C.R.R. Co. of N.J., 126 N.J.L. 340 (E. & A. 1941); Sommer v. State Highway Comm., 106 N.J.L. 26 (Sup. Ct. 1929); R. & A. Realty Corp. v. Penn. R.R. Co., 16 N.J. Misc. 537, 543, 3 A.2d 293 (Sup. Ct. 1938). Although the language *563 of these opinions, particularly that last cited, is fairly strong in derogation of the property owner's right, none of the cases appears on its facts to have involved total or substantial deprivation, as distinguished from impairment, of access, after the public authorities had completed their work. In Mueller, supra, we regarded these change-of-grade cases as sui generis (59 N.J. Super., at p. 596). For present purposes we need not definitively appraise their scope. We are satisfied that the principle they espouse would not justify total or substantial deprivation by the public authorities of existing access between private property and abutting public roadways by way of traffic control devices without compensation. In the Mueller case, involving possible blockading of land on a highway by erection of a parkway exit ramp, the matter was remanded for further proofs to ascertain, among other things, whether the property owner was, as he claimed, deprived of all practicable access to the abutting highway by virtue of the ramp. No such situation, of course, is presented by the facts before us here.
Nor do we regard this case as an appropriate vehicle for development of a general formula as to the degree of impairment of highway access, short of total or substantial deprivation, beyond which the public authorities, acting under the police power, would have to be regarded as taking private property with the consequent obligation of compensation. While some texts speak in terms of "substantial," "material" or "serious" interference with access, 39 C.J.S. Highways, § 141, p. 1081; 29 C.J.S. Eminent Domain, § 105, p. 910; 25 Am. Jur., Highways, § 154, p. 449; Id., § 318, p. 612, a perhaps more realistic statement is found, in particular reference to the analogous problem of regulating the use of driveways over public walks, in Breinig v. County of Allegheny, 332 Pa. 474, 2 A.2d 842, 847, 848 (Sup. Ct. 1938), to the effect that:
"The absolute prohibition of driveways to an abutting owner's land which fronts on a single thoroughfare and which cannot be reached by any other means, is unlawful and will not be sustained. But the *564 public authorities have the undoubted right to regulate the manner of the use of driveways by adopting such rules and regulations, in the interest of public safety, as will accord some measure of access and yet permit public travel with a minimum of danger."
That the foregoing expression also accords with the majority view as to the extent of noncompensable interference with private highway access through otherwise unexceptionable general safety regulations for the public use of highways, including the effect of center highway dividers, is the conclusion of the writer of the annotation cited above (73 A.L.R.2d, at pp. 691-692). See also Annotation, 73 A.L.R.2d 652 (1960). In one typical such decision, Langley Shopping Center v. State Roads Comm., 213 Md. 230, 131 A.2d 690, 691 (Ct. App. 1957), the court denied relief, stating that the median highway barrier complained of "does not deprive the appellants or their customers of all or substantially all ingress or egress to and from appellants' properties."
Plaintiff's principal reliance is upon Rose v. State, 19 Cal.2d 713, 123 P.2d 505 (Sup. Ct. 1942), and the three opinions in Meloon Bronze Foundry v. State, 8 Misc.2d 286, 166 N.Y.S.2d 586 (Ct. Cl. 1957); 6 A.D.2d 993, 176 N.Y.S.2d 452 (1958); and 18 Misc.2d 403, 191 N.Y.S.2d 3 (Ct. Cl. 1959).
In the Rose case the court held that where a railroad grade crossing elimination project deprived the property owner of his previous unrestricted access to a 66-foot public roadway and relegated him to access via a 14-foot "blind" lane on which two vehicles could not pass each other in opposite directions, the owner was entitled to be compensated because his easement of access had been "substantially impaired." Factually, that case is distinguishable from that before us here since the State has here interposed no physical impediment between plaintiff's property and the common roadway along any portion of its frontage. The State's action here has simply exposed the functional unsuitability of plaintiff's land and structure, as presently constituted, to accommodate *565 reception of freight carriers of the size necessary to deliver the particular merchandise plaintiff handles. Different land dimensions or further setback of the structure from the curb line would solve plaintiff's problem. The State is not called upon to refrain from highway improvements to serve the general welfare at peril of having to compensate plaintiff for the inadequacy of its freight reception facilities. As indicated above, we do not here have to consider adoption of the "substantial interference" test applied in Rose, as distinguished from the "substantial deprivation" criterion advocated in other cases. Neither would aid plaintiff's cause, as we view the matter.
Basically, the same differentiation can be made as to the Meloon cases cited above. There, too, a property owner was held entitled to be compensated for the effects of a railroad grade crossing elimination in depriving him of street access, but it is notable that there the owner was apparently totally deprived of his original highway access, and given by the State a makeshift, "unsuitable" accessway in substitution for the street ingress destroyed by the project. The New York courts applied the test that the public work must leave the owner with "suitable" access for his purposes. (176 N.Y.S.2d, at p. 453.)
If plaintiff no longer has any suitable access to his property, this should be regarded, we repeat, as attributable not to the entirely proper action of the defendant but to the unsuitable disposition of his facilities for his particular commercial needs and purposes. There is no cause of action.
We need express no opinion on the matter of limitations in the bringing of the action.
Judgment affirmed.