THE STATE OF NEVADA, ON RELATION OF ITS DEPARTMENT OF HIGHWAYS, APPELLANT, v. HARRY F. LINNECKE AND LILLIAN B. LINNECKE, HIS WIFE, RESPONDENTS.

No. 5978

April 16, 1970                    468 P.2d 8

*Harvey Dickerson,* Attorney General, *Kermitt L. Waters* and *Raymond Free,* Deputy Attorneys General, for Appellant.

*Frank R. Peterson,* of Reno, for Respondents.

## O P I N I O N

By the Court, Zenoff, J.:

This is an action in eminent domain. The state was taking .726 of an acre of property abutting Highway 40 owned by

Harry and Lillian Linnecke, husband and wife. Highway 40 was to be made into a controlled-access highway which would become Interstate 80, part of the federal highway system.

Before the taking, the Linneckes had direct access from their land onto Highway 40, but after the taking their access from the land was by a frontage road which required them to travel one and one half miles farther in order to reach their land from the highway or to get to the highway from their land. Respondents successfully contended in the trial court that the enforced circuity of travel to and from the property may be taken into account in fixing severance damages.

The trial court ruled, first, as a matter of law that direct access to the land was substantially impaired entitling the owners to compensation and, secondly, that the jury should assess damages in relation to special benefits that might accrue. The state appeals from the jury award of $25,000 representing $2,000 for the value of the property taken and $23,000 in severance damages to the remainder of the parcel.

The basic problem on appeal is: Does an abutting property owner's right of access to a public highway entitle him to compensation for severance damages where part of his land is taken in order to convert a conventional highway into a controlled-access highway so that access to and from his remaining property is controlled by a frontage road?

The state courts are divided in their resolution of this problem. Cf. People v. Ricciardi, 144 P.2d 799 (Cal. 1943); State v. Danfelser, 384 P.2d 241 (N.M. 1963); Selig v. State, 176 N.E.2d 59, 61 (N.Y. 1961); Northern Lights Shopping Center, Inc. v. State, 247 N.Y.S.2d 333 (N.Y.App. 1964), affirmed 204 N.E.2d 333 (N.Y. 1965); Bopp v. State, 227 N.E.2d 37 (N.Y. 1967). But see Priestly v. State, 242 N.E.2d 827 (N.Y. 1968), where the court held that the circuity of travel may be unsuitable access for the highest and best use of the remaining property. Since Priestly v. State, supra, the following cases support the awarding of compensation in circuity of travel-access cases: Argersinger v. State, 299 N.Y.S.2d 882 (N.Y.App. 1969); Columbus Holding Corp. v. State, 302 N.Y.S.2d 407 (Ct.Cl.N.Y. 1969); Taylor v. State, 302 N.Y.S.2d 174 (N.Y.App. 1969); In re New Police Station House Pct. No. 68, 304 N.Y.S.2d 74 (N.Y. App. 1969).

Generally, the emerging weight of authority holds that "[w]hen the controlled-access highway is constructed upon the

right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired he may recover damages therefor. The damages may be merely nominal or they may be severe. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances." State v. Thelberg, 350 P.2d 988, 992 (Ariz. 1960).

An abutting owner of a public highway has a special right of easement in a public road for access purposes. This is a property right of easement which cannot be damaged or taken from the owner without due compensation. People v. Murray, 342 P.2d 485, 488 (Cal.App. 1959). But an owner is not entitled to access to his land at *all* points in the boundary to it and the highway, although *entire* access to his property cannot be cut off. If he has free and convenient access to his property and his means of egress and ingress are not substantially interfered with, he has no cause for complaint. Breidert v. So. Pac. Co., 394 P.2d 719, 722 (Cal. 1964); City of Phoenix v. Wade, 428 P.2d 450, 454 (Ariz.App. 1967). The determination of whether such substantial impairment has been established must be reached as a matter of law. The extent of such impairment must be fixed as a matter of fact. Breidert v. So. Pac. Co., supra; People v. Ricciardi, supra; City of Phoenix v. Wade, supra; State Highway Comm'n v. Manry, 390 P.2d 97 (Mont. 1963); Thomsen v. State, 170 N.W.2d 575, 580 (Minn. 1969); McMoran v. State, 345 P.2d 598 (Wash. 1959); State v. Wilson, 438 P.2d 760 (Ariz. 1968); Balog v. State, 131 N.W.2d 402 (Neb. 1964).

2. A frontage road or service road is a highway facility adjacent to and part of an access-free road designed to provide access to the abutting land which, because of the control of access on the express road, is without means of ingress or egress from that road.

This present problem is one where the new interstate road is built on the location of a pre-existing conventional road. When the interstate road is built on a new location or alignment, i.e., where no road previously existed, the construction of the freeway gives the abutting property owner no right of access. The owner still has access to the old road, his only loss is access

to a major thoroughfare that has been relocated. 56 Nw.U.L. Rev. 587 (1961).[1]

If the abutter has suffered any compensable damage, it is because his right of access has been restricted, impaired or otherwise injured. He is, of course, also entitled to damages for any land taken. A right of access is the right of an owner of property abutting on a street or highway to ingress or egress to and from his premises by way of such street or highway. Still, the right of access is subject to the exercise of the public's primary right of travel on the road. These primary rights under the police power fall into the category of reasonable traffic regulations to which the right of access is subject. State v. Danfelser, supra.

The cases which grant compensation treat the frontage road as a factor mitigating damages. A substantial impairment with the direct access must be first shown. Once that finding is made, the measure of the harm is the decline in market value on a before-and-after valuation. The variables to be considered in arriving at a money figure are for the jury.

Nevada provides for severance damages in condemnation cases by NRS 37.110: "The court, jury, commissioners or masters must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

. . .

"2. If the property sought to be condemned constitutes only a part of a large parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff.

. . .

"4. Separately, how much the portion not sought to be condemned, and each estate or interest therein, will be benefited, if at all, by the construction of the improvement proposed by the plaintiff; . . . . "

The determination of market value includes the consideration

---

[1]This excellent law review article is quoted extensively, although its conclusion is not in line with judicial decisions and is seldom followed. At page 600, we note the policy of the Nevada Highway Department has been to compensate abutting land owners.

of any elements that fairly enter into the question of value which a reasonable businessman would consider when purchasing. Clark County School District v. Mueller, 76 Nev. 11, 348 P.2d 164 (1960); State v. Shaddock, 75 Nev. 392, 344 P.2d 191 (1959). Ordinarily, the complete obliteration of direct access to property abutting a highway diminishes its market value. Mitigation by construction of a frontage road lessens the loss.

We adopt the rule that there is right of action when the highway suffers a substantial change in relation to the property. In this case, the trial court decided that there was substantial impairment due to the taking away of the direct access to the Linnecke's property. The jury set the amount of the damage. We agree with the method and the result as being in accordance with the weight of authority.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.