310 A.2d 758.

RICHARD R. AUST *et ux. vs.* ANGELO MARCELLO, *Director of Public Works.*

NOVEMBER 2, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

DORIS, J. The petitioners, the owners of a parcel of real estate fronting on the westerly side of Killingly Street, a public highway, partly in the city of Providence and partly in the town of Johnston, bring this bill in equity against the respondent, the State Director of Public Works. They pray that either the respondent be restrained from interfering with their access to the public highway contiguous to their property and from constructing any fence or barrier that interferes with such right of access or, in the alternative, just compensation be awarded to the petitioners for the loss of access to said property.

After hearing, before a justice of the Superior Court, a decision was rendered for respondent for costs, wherein the trial justice found that if damages were to be awarded the award to petitioners should be in the amount of $3,000. Judgment was thereupon entered for respondent with costs.

The cause appears before us on petitioners' appeal from that judgment.

Acting pursuant to the authority contained in G. L. 1956 (1969 Reenactment) ch. 6 of title 37, and G. L. 1956 (1968 Reenactment) ch. 10 of title 24, respondent on or about October 26, 1961, filed in the office of the recorder of deeds of the city of Providence a description of the land and a plat thereof with a statement that the property therein described was being taken for highway and freeway purposes, and on or about October 13, 1961, said respondent filed in the office of the town clerk of the town of Johnston a description of the land and a plat thereof with a statement that the property therein described was being taken for highway and freeway purposes.

On the dates stated petitioners were the owners of land contiguous to Killingly Street so-called, a public highway, to which petitioners had unlimited access. The respondent filed the plats in conjunction with the plan of the state of Rhode Island to construct a freeway highway, so-called, whereby included in the taking was Killingly Street up to the property line of petitioners. As proposed by the plat, petitioners, according to their testimony, were deprived of access to the highway for a distance of approximately 94 feet. The respondent, while denying any taking, admitted that if a taking were found the distance involved was approximately 80 feet rather than the 94 feet as contended by petitioners.

The petitioners presented testimony through a real estate expert, Angelo Iannitelli, that their property abutting the highway had a market value of $28,000 before the taking and a market value of $10,000 less after the taking. The respondent presented a real estate expert, Richard W. Jalbert, who testified that petitioners' property had a market value of $28,000 to $30,000 before the taking and that the

taking resulted in a ten per cent loss in the market value of the property.

The trial justice in his decision found that respondent had established a line for freeway[1] purposes for a distance of 80 feet contiguous to petitioners' property and thereby had precluded petitioners from free access to that part of the highway. He further found that respondent had established a line for state highway[2] purposes for a distance of 65 feet contiguous to petitioners' property, but that said action did not interfere with petitioners' free access to that part of the highway.

The trial justice held that by taking the highway to the property line for freeway purposes, the state precludes petitioners from entering the freeway or any part thereof. He further held that petitioners have full access to that part of the highway designated as a state highway. *Honig* v. *Director of Public Works*, 106 R. I. 199, 258 A.2d 73 (1969); *Murphy* v. *Director of Public Works*, 103 R. I. 451, 238 A.2d 621 (1968). The trial justice also concluded that petitioners were thereby left with free access to the state highway along a 65-foot portion of their frontage and were able to use the same driveway to enter and leave their property that they had used before the line was established. The trial justice held that petitioners had reasonable access to their property and therefore there had

---

[1]General Laws 1956 (1968 Reenactment) §24-10-1 defining a freeway reads as follows:

"A freeway is a way especially designed for through traffic over which abutters have no easement or right of light, air or access by reason of the fact that their property abuts upon such way."

[2]Section 31-1-23(h) defining a state highway reads as follows:

"State highway. Every street or highway constructed and maintained, or maintained by the director of public works and the division of roads and bridges."

been no taking which was compensable under art. I, sec. 16, of the constitution of this state.[3]

In his decision, the trial justice cited and relied on a line of New Jersey cases which follow the rule that where a taking results in a reasonable access to the highway rather than a direct access which existed before the taking, no compensable injury results. *Tubular Service Corp.* v. *Comm'r of the State Highway Dept.*, 77 N.J. Super. 556, 187 A.2d 201 (1963), aff'd 40 N.J. 331, 191 A.2d 745 (1963). *Mueller* v. *New Jersey Highway Authority*, 59 N.J. Super. 583, 158 A.2d 343 (1960).

The rule applied by the trial justice was recognized in this state as early as 1929 in *Allen & Reed, Inc.* v. *Presbrey*, 50 R.I. 53, 144 A. 888 (1929). In that case the complainant was the owner of a triangular tract of land in downtown Providence and conducted thereon a business which required considerable loading and unloading of merchandise. The police, pursuant to a traffic ordinance, had established no-parking areas and one-hour-parking areas along the curb on two sides of the triangle but left unrestricted the third side. This court held that even though such regulation had impaired the easement of access, the complainant, having been left with reasonable access to its property, was not entitled to compensation. *See also Newman* v. *Mayor of Newport*, 73 R.I. 385, 57 A.2d 173 (1948).

The general rule in this state, then, is that where, in an exercise of police power, the right of access to land abutting upon a highway is impaired or diminished, such act is not a confiscatory taking requiring compensation unless the impairment or diminution is so substantial as to leave the property owner without reasonable access to his property. *Allen & Reed, Inc.* v. *Presbrey, supra.*

---

[3]Article I, section 16, of the constitution of Rhode Island provides: "Private property shall not be taken for public uses, without just compensation."

We have concluded however, that as a result of the enactment of §24-10-3[4] this rule is not applicable to cases in which easements of access to land abutting upon such a highway are extinguished by reason of the inclusion of the existing highway within a freeway line. The statute which was enacted in 1937 provides that where such an existing highway is included within a freeway, the existing easements of access therein may be extinguished by purchase or by taking under eminent domain. We are of the opinion that the statute constitutes a legislative declaration of public policy concerning compensability to land owners where easements have been extinguished by such an exercise of the police power and should therefore be afforded great significance. We hold public policy to be that such easements of access when extinguished shall constitute an exercise of the power of eminent domain for the purpose of establishing the damages resulting from such extinguishment.

It is our opinion that the Legislature did not intend to limit the application of this statute to cases in which there was total extinguishment of the easement. It is clear that where extinguishment was total the takings were compensable as being confiscatory in an unreasonable exercise of the police power. The legislative intent, in our opinion, was to enact a statute designed to provide those property owners whose prior existing easements were impaired only

---

[4]General Laws 1956 (1968 Reenactment) §24-10-3 reads as follows:

"Extinguishment of easements—Regulation of access.—Where an existing highway has been designated as or included within a freeway by the said director, existing easements of access, light or air may be extinguished by purchase or by taking under eminent domain, in accordance with any existing method now exercised by said director in purchasing or taking land for highway purposes. Access to such freeway from any existing highway, road or street may be regulated and restricted by said director. Access to any such freeway from any new highway, road or street shall be subject to the consent and approval of said director."

in part with the opportunity to establish the extent to which they were damaged, if any, by such taking. We have often held that the Legislature is presumed to know the state of existing relevant law when enacting a statute. *Loretta Realty Corp.* v. *Massachusetts Bonding & Ins. Co.,* 83 R.I. 221, 114 A.2d 846 (1955). We presume that when it enacted §24-10-3 the Legislature was aware of the decision in *Allen & Reed, Inc.* v. *Presbrey, supra,* which had been decided in 1929, eight years prior to the enactment of §24-10-3. We impute to the Legislature knowledge that under the rule laid down in *Allen* an exercise of the police power which left the abutting owner of the easement with no reasonable access to his property was an unreasonable exercise of the police power, confiscatory, and requiring compensation. It is our conclusion, therefore, that the Legislature intended by enactment of the statute to give to those property owners whose loss of access was not so extensive as to deprive them of all reasonable access an opportunity to establish that they had been damaged by its impairment, and to make available to them an opportunity to have their damages assessed by a jury pursuant to the procedures provided for in eminent domain cases.

In view of our conclusion that the provisions of §24-10-3 are applicable to the instant case, we are constrained to conclude that the trial justice erred in ordering judgment for the respondent with costs. However, since the trial justice indicated that if his decision were to be reversed he was making an alternate finding that the petitioners had established that they had been damaged by the diminution of their access in the amount of $3,000, it will not be necessary to remand the case for a new trial. An examination of the record indicates that the experts testifying before the trial justice had provided sufficient evidence to support the trial justice's findings and in these circumstances his findings will not be disturbed.

The petitioners' appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court for entry of judgment for the petitioners in the amount of $3,000.

Mr. Justice Joslin did not participate.

Mr. Justice Kelleher dissenting. This case presents us with the question which was not before this court in *Sullivan* v. *Marcello*, 100 R. I. 241, 214 A.2d 181 (1965). Here, the Austs, unlike *Sullivan*, have not lost all access to the highway which abuts their property. It is for this reason that I believe that the provisions of G. L. 1956 (1968 Reenactment) §24-10-3 are inapposite. When construing a statute, one should give its words their plain meaning unless a contrary intent clearly appears. Except in case of equivocal and ambiguous language, the words of a statute cannot be interpreted or extended but must be applied literally. *Podborski* v. *William H. Haskell Mfg. Co.*, 109 R. I. 1, 279 A.2d 914 (1971). The statute speaks of an extinguishment of existing easements of access, light or air. Webster's Third New International Dictionary in defining the word "extinguish" uses such phrases as to "do away with entirely," "wipe out," "make extinct," "nullify." I see nothing to interpret in the 1937 statute. It is applicable only in those instances where one's right of access has been obliterated. Here, the Austs' access to Killingly Street has been diminished, not destroyed.

An abutter's right to the highway has been described at length in *Wolfe* v. *City of Providence*, 77 R. I. 192, 74 A.2d 843 (1950); *Newman* v. *Mayor of Newport*, 73 R. I. 385, 57 A.2d 173 (1948); and *Allen & Reed, Inc.* v. *Presbrey*, 50 R. I. 53, 144 A. 888 (1929). *Wolfe* said that this right could not be unreasonably interfered with. *Newman* held that this right was subject to the police power but that it could not be *unreasonably* interfered with. The *Allen & Reed* case holds that this right cannot be *materially*

impaired without just compensation. *Wolfe* concerned the municipality's right to barricade the entrance to a gas station. *Newman* involved the denial of application of the owner of a proposed gas station to make cuts in the curbing. The dispute in *Allen & Reed* arose because of no-parking and one-hour-parking signs posted around its property. This court faulted the barricading and the denial of the curb-cut permits. It sanctioned the posting of the no-parking and the one-hour-parking signs.

In *Sullivan*, the court cited two lines of cases where a governmental agency, because of its involvement with a so-called limited access highway, impeded an individual's access to his property. One line took the position that the loss was not compensable because it occurred while the state was in the exercise of its police power. The other view, described in *Sullivan* as the "California rule," calls for compensation. This diversity of opinion was described as indicating a conflict between the police power and the power of eminent domain. In *Sullivan* noncompensability was described as being the majority view, while the awarding of compensation was considered to be the minority view. I believe that in actuality there is no diversity of opinion.

The key to compensation, in my opinion, is the showing of a *material* or unreasonable impairment of access referred to in the *Wolfe, Newman* and *Allen & Reed* cases. The police-power view is found in *Tubular Service Corp. v. Comm'r of the State Highway Dept.,* 77 N. J. Super. 556, 187 A.2d 201 (1963), *affm'd* in 40 N. J. 331, 191 A.2d 745 (1963), where it refused to set forth a formula as to the degree of impairment of highway access, short of total or substantial deprivation, beyond which the state would be required to pay compensation. Later, the court in *State v. Monmouth Hills, Inc.,* 110 N. J. Super. 449, 266 A.2d 133 (1970), in reaffirming the *Tubular* case, cited *Painter*

v. *State,* 177 Neb. 905, 131 N.W.2d 587 (1964), where it
was said,

> " 'The right of access of an abutting property owner
> to a public road is not an unlimited one. He is en-
> titled to reasonable access and the state in the exercise
> of its police power may limit access to abutting private
> property if *reasonable* access remains.' " (emphasis
> added)

The case often cited by those jurisdictions which hold
that loss of access is compensable is *State ex rel. Morrison*
v. *Thelberg,* 87 Ariz. 318, 350 P.2d 988 (1960), which states:

> "An examination of many authorities from various
> jurisdictions convinces us that the weight of authority
> in the United States is to the effect that either the
> destruction or the *material impairment* of the access
> easement of an abutting property owner to such high-
> way is compensable.
> "\* \* \*
>
> "When the controlled-access highway is constructed
> upon the right of way of the conventional highway
> and the owner's ingress and egress to abutting prop-
> erty has been destroyed or *substantially impaired,* he
> may recover damages therefor. The damages may be
> merely nominal or they may be severe.
> "\* \* \*
>
> "The measure of damages for the destruction or im-
> pairment of access \* \* \* is the difference between the
> market value of the abutting property immediately
> before and immediately after the destruction or im-
> pairment thereof. The damages awarded the abutting
> landowner for destruction or impairment of access
> therefore is based, not upon the value of the right of
> access to the highway, but rather, upon the difference
> in the value of the remaining property before and
> after the access thereto has been destroyed or im-
> paired. This in turn is based upon the highest and
> best use to which the land involved is best suited be-
> fore and after the right of access is molested." (em-
> phasis added)

In the *Thelberg* case the trial court had found a substantial impairment of access.

The so-called California rule had its genesis in *People* v. *Ricciardi*, 23 Cal.2d 390, 144 P.2d 799 (1943). An examination of that case shows the court conditioned compensation upon a showing of a "substantial impairment" of access.

The rule to be fashioned, I believe, would call for compensation for diminution of access upon a showing by the property owner of a substantial or material impairment of that right. The author (Professor William B. Stoebuck) of *The Property Right of Access Versus the Power of Eminent Domain*, 47 Tex. L. Rev. 733 (1969), discusses the various ways this right can be impaired, *i.e.*, closing of a street, cul-de-sac, limited access highways, divided highways, one-way streets, etc. He concludes by observing that, since the property owner has a right to reasonable access to the abutting public way, it does not matter if one speaks of police power or eminent domain, but rather, a taking calling for money damages has occurred if there has been an "unreasonable" or "substantial" diminution of that right. In *State ex rel. Dept. of Highways* v. *Linnecke*, 86 Nev. 257, 468 P.2d 8 (1970), the court, in adopting the rule in *Thelberg,* ruled that the determination of whether such a "substantial impairment" has been established is a question of law, while the extent of such impairment is a question of fact.[1]

In summary, I would in cases such as the one presently before us require a showing of a substantial impairment of access to the abutting way before damages could be awarded.

---

[1]The delineation of the rights of owners of land such as the Austs' property has been a fruitful source of litigation. A compendium of judicial thought on these matters can be found in 42 A.L.R.3d 13 (1972).

The trial justice found that notwithstanding the location of the freeway line, the Austs still retained reasonable access to Killingly Street. This finding, in my opinion, is another way of saying that the Austs had failed to show a substantial impairment of the right of access. Accordingly, I would affirm the trial justice's denial of any monetary award to the Austs.

*John M. Booth,* for petitioners.

*Richard J. Israel,* Attorney General, *George H. Egan,* Special Asst. Attorney General, for respondent.