LEO W. WOLFE *et al. vs.* CITY OF PROVIDENCE *et al.*

JUNE 30, 1950.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

194

CONDON, J. This is a bill for an injunction and for incidental damages brought against the city of Providence and its traffic engineer, Philip S. Mancini, for unlawfully closing a portion of Promenade street, a public highway in that city. The complainants are Gertrude M. Wolfe, lessee of a certain lot of land with improvements thereon situate at the southeast corner of Promenade and Gaspee streets, and Leo W. Wolfe, who rented the lessee's premises and conducted thereon the business of a gasoline filling station. After a hearing in the superior court on bill, answer and proof a decree was entered denying and dismissing the bill. The cause is here on complainants' appeal from that decree.

The trial justice found that the closing of Promenade street by the respondents was a reasonable and valid exercise of the police power by the bureau of police and fire of the city of Providence by virtue of general laws 1938, chapter 333, §§45 and 46; that such closing did not deprive complainants of ingress to and egress from their premises on Promenade street; and that even though such closing of that street had resulted in some damage to complainants there was no credible evidence by means of which such damage could be reasonably measured.

It appears from the evidence that the bureau of police and fire had enacted a rule or regulation providing for a plan of rotary traffic whereby portions of Promenade street and certain other streets were closed to all traffic. Photographs of the rotary traffic plan which were admitted in evidence as exhibits show certain barriers or "horses" barricading Promenade street at the entrance to complainants' gasoline station. It seems to be clear from one of these photographs introduced by complainants that ingress to and egress from their premises, without at least great inconvenience by physical obstructions, were prevented by the erection of such barriers. Another photograph taken

at a later time, apparently after a hearing had been held in the superior court on respondents' demurrer to complainants' bill of complaint, was introduced by respondents and shows that the barriers had been placed in Promenade street at or beyond the easterly lot line of complainants' premises, thus allowing access thereto from Promenade street.

Complainants conceded that the bureau of police and fire duly enacted a regulation providing for the "plan of rotary traffic" pursuant to which respondent Philip S. Mancini in his capacity as traffic engineer closed Promenade street. And they admit that if the bureau had the authority to so close that street respondent Mancini's action was not illegal, but they contend that the bureau was wholly without such power notwithstanding the enactment of G. L. 1938, chap. 333, §§45 and 46. Since in our view of the questions raised by the appeal the new position of the barriers, after the hearing in the superior court on the demurrer to the bill, is not decisive of the cause, we shall consider the appeal as though the facts and circumstances with reference to the placing of the barriers were as claimed by respondents and that there were some means of access, although somewhat inconvenient, to complainants' premises.

The "plan of rotary traffic" introduced in evidence by the respondents shows that a portion of Promenade street between Gaspee street on the west and Stillman street on the east is closed as a highway for through vehicular traffic in either direction. Promenade street, which is near the business center of Providence, is a public highway running generally east and west. Complainants' gasoline station is situated on the southeasterly corner of the intersection of that street with Gaspee street which at that point runs generally north and south. The entrance to this gasoline station is on Promenade street.

The next intersecting street to the east of the gasoline station is Francis street, and still further east is Stillman street. Both streets run generally north and south. Some-

what easterly of the easterly lot line of the gasoline station premises is the above-mentioned fence or barrier about half way across Promenade street so as to prevent through vehicular traffic from proceeding easterly on that street to Francis street. There is another fence at the intersection of the westerly line of Francis street with Promenade street to prevent such traffic from proceeding westerly across Francis street along Promenade street.

In the area of Promenade street thus blocked off to through highway traffic between Gaspee and Francis streets the "plan" shows "angle parking 35 spaces" on the north side of Promenade street, and "angle parking 39 spaces" on the south side. Arrows are shown on the plan in this area pointing easterly to the corner of Francis street, then turning southerly to the corner of Kinsley avenue and then turning westerly to an opening at a fence at a point where that avenue intersects Gaspee street. The apparent purpose of this part of the plan is to prevent that portion of Promenade street from being traversed by through vehicular traffic in an easterly or westerly direction and incidentally to provide a means of ingress to and egress from the blocked-off portion of Promenade street for vehicles which are allowed to be parked therein. That is to say, this portion of Promenade street which has been closed to traffic is apparently devoted exclusively to the parking of vehicles.

Respondents contend that this plan safeguards all of complainants' special rights, as abutters, in the highway, because ingress to and egress from their property has been provided on Promenade street. They further contend that if complainants have suffered any impairment of other rights which they may have in the highway, their loss is not different from the general public's loss and therefore it is *damnum absque injuria.* The plan, they argue, is a reasonable exercise of the power expressly conferred on the city by G. L. 1938, chap. 333, §§45 and 46, to enable it to regulate traffic on certain public highways. And they argue further

that, if the complainants have been damaged by the closing of Promenade street notwithstanding the safeguarding of their right of ingress and egress to and from their premises to said street, they have an adequate remedy at law.

Complainants contend that this plan, in so far as it provides for the closing of Promenade street, is not a legitimate regulation of traffic but is an unlawful invasion of their special property rights in that street as abutters thereon. They further contend that at the time they brought their bill of complaint such invasion constituted a continuing trespass for which only equity was competent to give adequate relief. An action at law would not at that time, they submit, have been able to fully compensate them and would have entailed a multiplicity of suits. At the time of the hearing on the merits their lease of the premises had expired and they no longer had a property right to protect by injunction. However, they claimed the right to an adjudication in equity of their claim for damages for the alleged unlawful destruction of their business.

They argue that the plan provided, in effect, for a partial abandonment of Promenade street and constituted a taking of their property in the then subsisting lease of the premises on said street without just compensation and without due process of law. They further argue that G. L. 1938, chap. 333, §§45 and 46, are valid only if they are construed to authorize a city to prohibit traffic on a public highway solely to an extent that will not deprive abutters of their special rights in such highway. They submit that if the statute is construed to authorize the city to prohibit *all traffic* on Promenade street without regard to such rights of abutters therein, it fails as to them to provide for due process of law in the taking of their property and is, therefore, unconstitutional. Predicated on the correctness of that contention complainants further say that respondents have thus committed an unlawful act to the detriment of complainants' special property rights in Promenade street resulting in the destruction of the business which complain-

ant Leo W. Wolfe conducted on the leased premises on that street.

The need of vesting municipalities with broad powers to regulate traffic on public highways has long been recognized by the legislature of this state and this court has upheld such grants of power. On at least two occasions it has been called upon to pass judgment on the reasonableness of the exercise of such power by the city of Providence. *Fritz* v. *Presbrey*, 44 R. I. 207; *Allen & Reed, Inc.* v. *Presbrey*, 50 R. I. 53. In the latter case it was required to weigh the relative rights of abutting owners in the highway and the rights of the general public therein to park their vehicles for brief periods of time as an incident to traveling on the highway. But this court has not, as far as we are aware, ever had occasion to pass upon a regulatory act similar in scope and purpose to the one involved in the case at bar nor does it appear that G. L. 1938, chap. 333, §45, has ever been construed or heretofore applied in any case by this court.

That section was first enacted in 1932. P. L. 1932, chap. 1925, sec. 9. In the revision of 1938 it appears as G. L. 1938, chap. 333, §45, in the form in which it was originally enacted. That portion of it which is involved in the instant cause reads as follows: "§45. The town councils of the several towns may by ordinance or regulation prohibit the use of all vehicles or any of them on such public highways in their respective towns other than state highways and main highways leading from town to town, as they may so designate by suitable and conspicuous signs placed on such highways * * *." By §46 of that chapter the term "town council" in §§44 and 45 is, in the case of the city of Providence, stated to mean "bureau of police and fire." By §44 of the same chapter town councils are authorized to pass ordinances, by-laws or regulations as they deem proper for the parking of vehicles on highways within the limits of their respective towns.

Respondents in putting their plan of rotary traffic into

effect construed these statutes literally, especially §§44 and 45, and apparently closed Promenade street completely from Gaspee street to Stillman street at first without allowing complainants even vehicular access on Promenade street to their property. Later, however, after complainants' bill was filed, they moved their barriers from Gaspee street easterly a sufficient distance in Promenade street so as not to block access to complainants' premises. Apparently it was that alteration in the respondents' "plan of rotary traffic" which satisfied the trial justice that it was a lawful regulation of traffic in accordance with the authority conferred by §§44 and 45.

We are concerned here with the effect of such statutes, as thus construed and applied, on an abutter's special property rights in a public highway. What the effect would be on the rights of one merely as a member of the general public, we do not consider or decide. If at the time their bill was filed complainants had a special right of property in Promenade street over and above the mere easement of passage which they had in common with the general public, obviously a continuing wrong or trespass was done them by respondents in violation of such property right, and equity will not suffer such wrong to go without relief. If the statutes under which respondents assumed to act do not or cannot validly confer the full power that they have exercised over complainants' property, equity will afford relief, for this court has said "if public functionaries assume a power over property which the law does not give them, a court of chancery no longer considers them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority." *Greene* v. *Mumford,* 5 R. I. 472, 475.

The owner of complainants' premises is presumed, in the absence of evidence to the contrary, to own the fee of Promenade street, adjacent to such premises, to the middle of the street. *Newman* v. *Mayor of City of Newport,* 73

R. I. 385; *Adams* v. *John R. White & Son, Inc.,* 41 R. I. 157, 161; *Healey* v. *Babbitt,* 14 R. I. 533; *Hughes* v. *Providence and Worcester R.R.,* 2 R. I. 493. And that is the general rule. 39 C.J.S. Highways §136. As against the public, the owner's lessee in this respect stands in the place of the owner. *In re Singer-Kaufman Realty Co.,* 196 N.Y.S. 480.

Certain private rights which are not common to the public arise from such ownership; an abutter is entitled to have the whole highway kept open. *Gill* v. *Town Council of Jamestown,* 47 R. I. 425. The state is without power to destroy a street by an obstruction without compensating purchasers by the plat who are injured by such obstruction. *Gerhard* v. *Seekonk River Bridge Comm'rs,* 15 R. I. 334. The special rights of the abutter are property of which he cannot be deprived without his consent or without due process of law. 39 C.J.S. Highways §141. Such rights are appurtenant to land and are within the jurisdiction of equity to protect. *Breinig* v. *Allegheny County,* 332 Pa. 474.

The abutting owner's title to the fee to the middle of the street entitles him to another property right in the whole street by way of an easement of right of way. Of the enforcement of such a right by abutting landowners we said in *Gill* v. *Town Council of Jamestown, supra,* at page 431: "Whether, as one of the public merely, these abutters could maintain this appeal we are not called upon to decide. As abutters they are entitled to a special right to have the whole highway open." Such an injury to private property is a special and peculiar wrong to the owner and will be enjoined. Injunctive relief is especially applicable where the injury is continuous or is being constantly repeated, and the legal remedy would necessarily involve the bringing of successive actions. *Lonsdale Co.* v. *City of Woonsocket,* 21 R. I. 498. And where a continuing trespass is the ground for equitable relief there is an incidental right to an accounting for past damages. *Lonsdale Co.* v. *City of Woonsocket,* 25 R. I. 428.

Abutters, as members of the general public, are entitled to the use of the street from end to end and from side to side, and if specially damaged by an unauthorized obstruction of the way they are entitled to have it abated. 2 Elliott, Roads and Streets (4th ed.) §828. In *Healey* v. *Kelly,* 24 R. I. 581, this court applied that principle of law and held that an abutter was "entitled to an easement in the street to its full length." And it has also been decided by this court that an abutter may, because of his special right in the highway, compel the removal of the obstruction so that the whole highway may be open. *Gill* v. *Town Council of Jamestown, supra.* In the instant cause there can be no question that the complainants' rights, as lessees of the owner of the fee, to use Promenade street between Gaspee and Francis streets, and even beyond to Stillman street, have been obstructed by these respondents who evince a determination to continue such obstruction under a claim of express statutory authority to do so. Unless that alleged authority is valid, complainants are entitled to relief.

Respondents, however, contend that an injunction will not issue against a municipality or its officers upon a mere allegation of irreparable injuries without showing further equities, except to prevent a breach of trust on the part of public officers or to prevent some illegal act under color or claim of right injurious to individuals without corresponding public benefit. The short answer to that contention is, as indicated under the discussion of the preceding point, that the complainants allege special equities growing out of their rights in Promenade street as abutters, and that they claim the acts of respondents are unlawful.

A further answer is that in a sense respondents have committed a breach of trust by obstructing complainants' use of the street. A town as such has no property rights in a public highway unless it appears that it has acquired the fee therein. It is simply the representative of or a trustee for the traveling public whose right in the highway is merely an easement of passage. *Newman* v. *Mayor of City*

*of Newport, supra.* If the town fails to keep the highway open for travel and permits an obstruction thereof, or itself permanently closes the highway or a part of it, without proper legal authority, it commits a breach of trust. *Gill* v. *Town Council of Jamestown, supra; Stone* v. *Peckham,* 12 R. I. 27.

An abutter is entitled to legal redress if a use permitted by the municipality practically closes the street. *Kane* v. *New York Elevated R.R.,* 125 N. Y. 164. Any unreasonable or unauthorized obstruction of a street is a nuisance *per se* and this is so even if the nuisance is caused by a municipality. In this state a municipality may permanently close or abandon a street only after formal proceedings of a semijudicial nature in accordance with G. L. 1938, chap. 72, §§31 and 32. *Coy Real Estate Co.* v. *Pendleton,* 45 R. I. 477.

Respondents make a further point to the effect that the general assembly of the state of Rhode Island by express legislation delegated to cities and towns the right to prohibit the use of all vehicles on certain public highways; and the act of closing off a portion of Promenade street was a valid and lawful act of the respondents pursuant to such legislation. The legislation referred to is G. L. 1938, chap. 333, §§45 and 46, quoted earlier in this opinion. Respondents point out that complainants have merely alleged that the closing of Promenade street was illegal and without lawful cause, and that such an allegation raises simply a question of whether such closing was reasonable and not whether the statute and the police regulations enacted pursuant thereto are valid. We do not agree with that view. We think that the allegation of illegality comprehends the question of the validity of both the regulations and the statute in so far as the respondents have sought to apply them to complainants as abutters on Promenade street. In other words, if it is claimed that the statute authorizes the city, through its bureau of police and fire, to enact a regulation under which respondent Mancini perma-

nently closed a portion of Promenade street to all vehicles and incidentally devoted that street to some other different use, then complainants contend that both the regulations and the statute are invalid, and the acts of both respondents thereunder are unlawful.

The immediate question to be determined, therefore, is the validity of §45. If the legislature intended to vest in the city the sweeping power which it has exercised here, such section would be void as against these complainants, because it would authorize the city to deprive them of property without compensation and without due process of law. Such a construction goes beyond authorizing the city to regulate traffic on its highways in aid of the public's easement of passage, and authorizes the *permanent* prohibition of the easement of passage by vehicles, thus reducing the portion of Promenade street in question to the inferior status of a mere footway. The section, in our opinion, was not intended to have so broad a scope but was intended to authorize cities and towns to close certain streets in order to promote an orderly flow of traffic, provided such closing would not result in depriving abutters on such streets of their property rights therein. Beyond that the legislature could not validly go.

Of course, the legislature may validly authorize a municipality to exercise broad powers of regulation of traffic on highways where the requirements of public safety and convenience of travel make certain limitations on the right to travel on the highways imperative or necessary. Such authority may even go to the extent of allowing a municipality to prohibit travel except in one direction, to limit the size or weight of the vehicles traversing certain highways, or, in emergencies, to prohibit all traffic for reasonable periods of time; but it may not authorize cities and towns to *permanently* prohibit, without compensation to abutters, the use of the highway at *all* times to *all* vehicles and thus, in effect, decree the abandonment of the street as a vehicular way. If abandonment is necessary or desir-

able there is a statutory procedure for accomplishing it. G. L. 1938, chap. 72, §§30 and 32.

The reasons which justify complainants' opposition to the closing of Promenade street, despite the provisions of §45, have already been indicated. Some further discussion especially with reference to the validity of that section will make those reasons clearer. An abutter's right in the street is a property right and cannot unreasonably be interfered with. *Allen & Reed, Inc.* v. *Presbrey, supra,* at page 59. 39 C.J.S. Highways §141. *A fortiori,* it cannot be taken away by closing the highway without payment of just compensation and without due process of law. *Johnston* v. *Old Colony R.R.,* 18 R. I. 642, 644. The general assembly of this state has recognized these limitations on its authority by expressly providing that when a town desires to abandon a public highway it shall first accord to abutters thereon such due process. G. L. 1938, chap. 72, §§30 and 32.

It has been held that the legislature may, in the interest of the public welfare, legalize what would otherwise be a public nuisance, but it may not in the exercise of such power take an abutter's property in the street for a public use without just compensation. *Huebschmann* v. *Grand Co.,* 166 Md. 615. Such an easement cannot be extinguished by a municipality but it may be condemned and compensation paid. *Gailey* v. *Wilkinsburg Real Estate & Trust Co.,* 283 Pa. 381. Private rights, not common to the public, arising from ownership of property contiguous to the highway constitute property of which an abutter cannot be unlawfully deprived. *Kelbro, Inc.* v. *Myrick,* 113 Vt. 64. A use of a highway inconsistent with the purpose for which it was laid out constitutes a taking of property of the abutters thereon, which neither the legislature nor the city may lawfully undertake without providing compensation for such taking. *Johnston* v. *Old Colony R. R., supra.*

Respondents, however, rely upon the case of *Calumet Federal Savings & Loan Ass'n* v. *City of Chicago,* 306 Ill. App. 524, which they say is on all fours with the instant

case. We do not think it is. In that case *all* vehicular traffic was not prohibited on the street on which complainants' premises abutted. The city merely blocked it at one end so that access to a heavily traveled intersecting street was prevented. While this action placed complainants' property in a dead-end street it did not close that street to traffic or subject it to the uses solely of a parking area as appears to have been done in the case at bar. There is, however, language in the court's opinion in that case to the effect that the power of the legislature over the highways is absolute. That is going much further than this court has ever gone. On the contrary in this state it has been expressly held that blocking a public highway at one end and "cooping" up an abutter's estate in a "cul-de-sac" is taking more or less value from it. *Johnston* v. *Old Colony R.R., supra.* And in California in a situation similar to the one in *Calumet Federal Savings & Loan Ass'n* v. *City of Chicago, supra,* an abutter was held to be entitled to relief because the city by closing one end of the street had placed his land in a cul-de-sac. *Beals* v. *City of Los Angeles* [Cal.], 116 P.2d 489.

But the respondents argue that it is frivolous for complainants to contend that a public highway is abandoned and has ceased to be useful to the public merely because it is closed to through vehicular traffic. Promenade street, they argue, is open to the public for pedestrian and parking purposes. The truth is that, except for pedestrians, the public easement of travel on Promenade street from Gaspee street to Francis street and beyond to Stillman street has been banned permanently, and the area has been devoted solely to parking. This in itself is sufficient ground for relief in equity, as it is a clear violation not only of the public right but also of the abutters' special rights of property in the fee of the street. It is an exclusive use of the street inconsistent with the public easement of passage thereon. Such an inconsistent use is unlawful. A highway must be kept open for travel and not diverted

to a wholly inconsistent use. *Perlmutter* v. *Greene*, 259 N. Y. 327. "No part of a highway can be appropriated to the private uses of persons other than abutting owners." *Opinion of the Justices*, 300 Mass. 602, 607. To make of a portion of a street as is done here what virtually amounts to a parking lot and to ban all through vehicular traffic thereon by abutters as well as by the public is certainly not in keeping with the purpose for which the way was dedicated as a public highway. The public acting through a municipality is without right to make a use of the highway which is incongruous with that purpose and which is also injurious to the proprietor of the soil abutting the highway. 39 C.J.S. Highways §139.

In the case of *Allen & Reed, Inc.* v. *Presbrey, supra,* which is strongly relied on by the respondents in support of their conception of what limitations may be placed upon the property rights of abutters in the streets as an incident to the reasonable regulation of traffic by the city, there was no deprivation of the right of passage over the streets there in question. The only issue was whether the ordinance authorizing the placing of signs permitting parking in the streets for limited periods of time at the curb adjacent to the complaining abutter's property deprived such abutter of free ingress to and egress from its property and constituted a taking of its property without due process.

Such is not the issue in the case at bar. Here the regulation of the bureau of police and fire deprives the complainants wholly of the easement of passage by vehicles in Promenade street between Gaspee and Francis streets, and the respondents have further undertaken to devote that portion of the street to the parking of vehicles without regard to the property rights of the complainants in the street and without providing compensation to them for such deprivation.

We are, therefore, of the opinion that §45, *supra,* is invalid in so far as it purports to authorize the closing of a street to all vehicular traffic without affording to abutters

thereon compensation and due process of law before depriving them of their special property right in the full easement of travel thereon. Respondents having acted under such a construction of that statute, their acts were unlawful. Complainants therefore are entitled to relief under their bill, but since they are no longer lessees with a property right as such in the premises on Promenade street they have no present right to a mandatory injunction directing respondents to remove the barriers which they have erected on that street and to restore that street to vehicular traffic. However, it is clear that they are entitled to damages for the loss of their business.

Complainants claimed that their real loss was about $30,000 which they computed by capitalizing at the rate of 10 per cent an annual net income of the gasoline business in the sum of $3000. We find no merit in such contention. The gasoline business at the location in question lacked stability and permanence inasmuch as it was dependent entirely upon the will of the city of Providence in renting the premises from year to year. The lease could be terminated by the landlord at the end of any year and in fact was so terminated on March 1, 1948. Regardless of the adoption of any traffic plan it was thus within the power of the city to destroy whatever business complainant Leo W. Wolfe had at such location by demanding possession of the leased premises. Before March 1, 1947 the city was without such power, as the lessee had paid her rent and was entitled to uninterrupted possession at least until that date. Only the unlawful acts of the respondents in closing Promenade street thus caused the loss of business suffered by complainants up to that date.

However, their continuance on the premises thereafter when they knew that a gasoline business could no longer be profitably conducted thereon because of the rotary traffic plan was an act for which they cannot equitably hold these respondents liable in damages. The most that we can say complainants have established is that the unlawful acts

of the respondents impaired the value of the business which was done on the leased premises for the balance of the term. And they have stipulated that such element of damage shall be considered only up to January 27, 1947 when they filed their bill of complaint.

In our opinion the evidence shows that complainant Leo W. Wolfe's gasoline business was rendered practically worthless by the enforcement of the rotary traffic plan after October 16, 1946. At that time complainant Gertrude M. Wolfe's lease of the premises had about four and one-half months to run for which the annual rent of $150 had been paid in advance to the city of Providence. It further appears from the evidence that complainant Leo W. Wolfe's net income from the gasoline station on said premises for the ten months of 1946 up to October amounted to $2595.02. Such evidence was not as weighty as it might have been in proof of that fact but it was admitted and is uncontradicted by any other competent evidence.

Complainant testified that he did practically no business after the traffic plan went into effect. In other words, in accordance with the stipulation of the parties that damages for loss of income should not extend beyond the date of filing of the bill on January 27, 1947, there was a loss of income for a period of almost three and one-half months, which on the basis of the preceding ten months' net income amounted to approximately $900. We think that sum represents a fair and equitable approximation of the damages suffered by complainants as a result of the destruction of the gasoline business in so far as it is legally possible to determine such damages from the relevant evidence in the record.

The complainants' appeal is sustained, the decree appealed from is reversed, and on July 10, 1950 the parties may present to this court for approval a form of decree to be entered in the superior court awarding complainants

damages in the sum of $900 and denying the relief other-
wise prayed for in the bill.

*Fergus J. McOsker,* for complainants.

*William E. McCabe,* City Solicitor, *Harry Goldstein,*
Assistant City Solicitor, for respondents.