375 A.2d 948.

HENRY D'AGOSTINO *et al. vs.* JOSEPH E. DOORLEY, JR. *et al.*

JULY 27, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Doris, J. This is an appeal from a Superior Court judgment granting the defendants' motion to dismiss the plaintiffs' complaint to cancel the action of the mayor and the City Council of Providence in abandoning a portion of Parley Street in said city.

Following oral argument before us on this case, the court divided equally and the judgment of the Superior Court was affirmed. *D'Agostino* v. *Doorley,* 117 R.I. 463, 367 A.2d 704 (1977). Thereafter, plaintiffs filed a motion seeking reargument before a full court. We granted the motion (order entered February 3, 1977) and subsequently heard the parties on reargument.

A Superior Court justice, sitting without a jury, found that the city of Providence, in abandoning a portion of Parley Street, in said city, followed the statutory provisions for abandoning public highways as contained in G.L. 1956 (1968 Reenactment) §§24-6-1 and 24-6-2, as amended by P.L. 1975, ch. 74, §1. In addition, the trial justice found

that the notice provisions of this abandonment statute were not in violation of the due process requirements of the U.S. Const. amend. XIV. Therefore, the trial justice denied plaintiffs' prayers for injunctive relief which would have restrained the city of Providence from abandoning that portion of Parley Street and would also have restrained the other defendants from maintaining a fence barrier around it. However, the trial justice pointed out that plaintiffs were not left without any remedy since they could still maintain an action for any damages caused by the abandonment in accordance with §§24-6-3 and 24-6-4.

In denying injunctive relief, the court relied on its finding that the city complied with the abandonment statute and thus found it unnecessary to consider other issues relating to the status of Parley Street. In reviewing this decision we are limited to those matters which were considered by the trial court. Therefore the principal issues we must decide are whether the notice provisions of §§24-6-1 and 24-6-2 were properly interpreted and followed, and whether, as followed, they comport with requirements of due process. Although the record is unclear as to whether Parley Street is a public highway or driftway within the meaning of the statute, we will assume, without deciding, for purposes of determining the legality of the abandonment procedure that it is, in fact, a public highway.

The plaintiffs are owners of property abutting both sides of Parley Street, south of the section of Parley Street that was abandoned by the city of Providence. The private defendants are owners of the property abutting both sides of the section of Parley Street that was abandoned and, by virtue of the abandonment, also become fee owners of the abandoned section.

The approximately 172-foot section of Parley Street that was abandoned (the distance is approximate since the shape of the street is trapezoidal and therefore the length

varies) has been fenced since the early 1950's and impassable since sometime in 1938 or 1939. However, it was not until October 1971 that the Providence City Council officially abandoned the highway pursuant to §24-6-1 et seq. Shortly thereafter, plaintiffs filed their complaint alleging that the abandonment was improperly processed by the council.

The plaintiffs contend that the trial justice in his findings misinterpreted the notice provisions of the abandonment statute as they relate to abutters or, in the alternative, that the statute as interpreted violates the due process clause of the fourteenth amendment to the United States Constitution. The plaintiffs are here appealing the granting of defendants' motion for involuntary dismissal under Super. R. Civ. P. 41(b)(2) which was granted at the close of plaintiffs' evidence.

Section 24-6-1[1] deals with the actual order of abandon-

---

[1] "24-6-1. Order of abandonment—Reversion of title—Notice.—Whenever, by the judgment of the town council of any town, a highway or driftway in said town, or any part of either, has ceased to be useful to the public the town council of said town is authorized so to declare it by an order or decree which shall be final and conclusive; and thereupon the title of the land upon which such highway or driftway or part thereof existed shall revert to its owner, and the town shall be no longer liable to repair the same; provided, however, that the said town council shall cause a sign to be placed at each end of such highway or driftway, having thereon the words 'Not a public highway', and after the entry of the said order or decree shall also cause a notice thereof to be published in a newspaper of general circulation, printed in English at least once each week for three (3) successive weeks in such newspaper circulated within said city or town and a further and personal notice shall be served upon every owner of land abutting upon that part of the highway or driftway which has been abandoned who is known to reside within this state but nothing herein contained shall in any manner affect any private right-of-way over the land so adjudged to be useless as a highway or driftway, if such right had been acquired before the taking of such land for a highway or driftway."

ment and contains notice provisions substantially the same as §24-6-2.[2]

The trial court found by uncontradicted evidence that none of plaintiffs own any land abutting upon the part of Parley Street sought to be abandoned. The trial court also found notice by advertisement was established by an affidavit of advertisement by an official of the Providence Journal Company.

The plaintiffs do not dispute the fact that the notice was published or that the substance of the notice was sufficient. Instead they contend that personal notice was required by the statute or by virtue of the due process clause and therefore published notice was insufficient. They argue that the statute is ambiguous and that the proper interpretation is that all abutters of the highway, not merely those on the abandoned section, should receive personal notice. We find no such ambiguity. It is clear from the statute that the Legislature requires personal notice of an abandonment to be given only if a highway abutter owns land abutting upon that part of such highway which it is proposed to abandon.

The plaintiffs cite our decision in *Wolfe* v. *City of Providence,* 77 R.I. 192, 74 A.2d 843 (1950) for a definition of an "abutting owner", and a description of the rights of

[2]"24-6-2. Notice to abutting landowners of proposed abandonment.— Every town council, before proceeding to abandon any highway or driftway or any part thereof, shall give notice to the owners of the lands abutting upon any part of such highway or driftway within the town to appear, if they see fit, and be heard for or against such abandonment, and as to the damage, if any, which they will sustain thereby. Such notice shall be given by advertisement once a week for three (3) successive weeks next prior to the meeting of the town council at which such abandonment is to be first considered, in some newspaper of general circulation within said city or town printed in English and a further and personal notice shall be served upon every person known to reside within this state who is an owner of land abutting upon that part of such highway or driftway which it is proposed to abandon."

such an "abutting owner". They refer particularly to the language which says that a highway abutter is entitled to the use of the street from end to end. However, their reliance on this case is misplaced. *Wolfe* does provide a broader definition of abutters than the abandonment statute but it is with the abandonment statute that we are here concerned. It is of no moment that "abutters" can be broadly construed since §§24-6-1 and 24-6-2 specifically limit the types of abutters who are entitled to personal notice of abandonment of a highway. The plaintiffs do not fit within this specific category of abutters. Therefore, at least in terms of the statutory requirements, it is clear that they were only entitled to notice by advertisement, and we agree with the trial court's finding that the notice was in fact given and the statute followed. We next turn to the question of whether this type of notice is sufficient under the due process clause of the fourteenth amendment.

An abandonment of a highway is, by its nature, very similar to an eminent domain proceeding. It may require compensation for damages in appropriate instances although often the damages are nominal. *See Aust* v. *Marcello,* 112 R.I. 381, 310 A.2d 758 (1973) and *Wolfe* v. *City of Providence, supra.* Although it does not always reach the magnitude of a taking, a number of courts have referred to an abandonment or vacation of a street as the "taking" of private property rights of easement of access from abutting landowners under the sovereign's power of eminent domain and thus requiring compensation for damages. *McCann* v. *Clarke County,* 149 Iowa 13, 127 N.W. 1011 (1910); *Borghart* v. *City of Cedar Rapids,* 126 Iowa 313, 101 N.W. 1120 (1905); *German Lutheran Church* v. *Baltimore,* 123 Md. 142, 90 A. 983 (1914); *Illinois Central R.R.* v. *Moriarity,* 135 Tenn. 446, 186 S.W. 1053 (1916); 26 Am.Jur.2d *Eminent Domain* §241 (1966). However, we are not being called upon to review a decision on dam-

ages. What we are being called upon to review is the statutory *process* allowing such a "taking".

In *Golden Gate Corp.* v. *Sullivan,* 112 R.I. 641, 314 A.2d 152 (1974), we ruled that the taking of private property by eminent domain does not trigger the due process clause prior to the taking and therefore no hearing is required prior to the taking. This does not mean that property can be taken without just compensation or for that matter without notice and opportunity to be heard as to compensation. It only means that there is no constitutional right to a hearing prior to the taking since the taking is a legislative decision.

The Legislature, although not constitutionally required to do so, has provided for prior hearings in some instances. The statutory processes must be scrupulously followed in these instances or the actions may be held to be invalid. However, in the recent case of *Paiva* v. *Providence Redev. Agency,* 116 R.I. 315, 356 A.2d 203 (1976), we ruled that where the statutory process for constructive notice was followed in an eminent domain taking, there being no constitutional right to a prior hearing, personal notice was not required. In that case, notice of a hearing on the proposed taking was published as required by the statute. The plaintiff testified that this publication had not come to his attention prior to the hearing. We ruled that since he was not constitutionally entitled to a hearing prior to the taking, the plaintiff's only rights prior to the taking were those given him by the statute. Since the statutory mandate had been complied with and the time allotted for a hearing passed, the plaintiff's remedy was for compensation for damages caused by the taking.

Since abandonment is a function so similar to an eminent domain proceeding, plaintiffs here are equally limited by the statutory scheme in their right to a hearing prior to abandonment. See 26 Am.Jur.2d *Eminent Domain* §145

(1966). The statute provides for personal notice to a limited group of persons and, as noted above, plaintiffs are not within this group. The statute also provides for constructive notice by publication to a larger group of persons and, as noted above, plaintiffs are within this group. The trial court found that these notice provisions were followed and we have no reason to question that finding. The plaintiffs clearly missed the opportunity given them under the statute and the abandonment proceeding was statutorily correct.

Even if plaintiffs were entitled to due process considerations prior to the hearing, we have no doubt that the constructive notice was sufficient. In the case of *East Greenwich Fire Dist.* v. *Penn Central Co.*, 111 R.I. 303, 302 A.2d 304 (1973), we had occasion to consider constructive notice as it related to due process requirements. In that case we considered the sufficiency of the published notice of the closing of several streets at public railroad crossings.

Although the specific issue considered was the substantive sufficiency of the notice, we concluded that the published notice was " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 315, 302 A.2d at 311. In so ruling, we were referring to standards of due process as articulated by the United States Supreme Court in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and later in *Schroeder* v. *City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). We noted then and we reiterate now that due process is not a mechanical rule but instead is one which must be decided by the facts of each case.

The plaintiffs would have us invalidate any proceeding where constructive notice has been used instead of personal notice. This we are unwilling to do. However, we

are also unwilling to go so far as to say than constructive notice is an acceptable practice in every situation. We merely hold today that in the abandonment of a street, notice in accordance with the provisions of §§24-6-1 and 24-6-2 is sufficient to meet any requirements of due process. This case as in several similar cases in this court does not fall within the scope of the rule articulated in *Schroeder* v. *City of New York, supra* at 212-13, 83 S.Ct. at 282, 9 L.Ed.2d at 259, which says:

> "The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."

We refer particularly to *Mello* v. *Board of Review*, 94 R.I. 43, 177 A.2d 533 (1962), where constructive notice was found sufficient for board of appeals hearings on zoning variances; *Tuite* v. *Zoning Bd. of Review*, 95 R.I. 12, 182 A.2d 311 (1962), where constructive notice was again found to be sufficient for hearings on zoning variances by a board of appeals; and *Golden Gate Corp.* v. *Town of Narragansett*, 116 R.I. 552, 359 A.2d 321 (1976), where constructive notice by publication in a newspaper was held sufficient to give concerned property owners notice of proposed comprehensive revision of town's zoning classifications.

Furthermore, *Schroeder* said nothing about notice and a hearing prior to the taking. It merely said that the constructive notice was insufficient to apprise the complainant of her right to be heard on a claim for compensation for damages. Since we are not considering any rights plaintiffs may have in regard to compensation for damages, *Schroeder* is inapposite.

Since we find no violation of the plaintiffs' right of due process by the use of constructive notice, and since we

agree with the trial court's finding that the abandonment statute was properly interpreted and followed, we hold that the trial justice was correct in dismissing the action.

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

Mr. Justice Joslin, with whom Mr. Justice Kelleher joins, dissenting. The Legislature has assigned city councils a two-fold function with respect to highway abandonment. One function is legislative in nature: to determine whether a street "has ceased to be useful to the public" and should therefore be abandoned. General Laws 1956 (1968 Reenactment) §24-6-1. As to that issue, notice by publication is clearly constitutionally sufficient. *Paiva* v. *Providence Redev. Agency,* 116 R.I. 315, 320-21, 356 A.2d 203, 206 (1976); *Golden Gate Corp.* v. *Sullivan,* 112 R.I. 641, 644, 314 A.2d 152, 154 (1974). The council's second function — a function that is completely ignored by the majority — is judicial in nature: to permit "the owners of the lands abutting upon *any part* of such highway * * * to appear * * * and be heard * * * *as to the damage,* if any, which they will sustain thereby," §24-6-2 (emphasis added), and to "appraise and award such damages," §24-6-3, at the same time that it enters an order or decree of abandonment.[1]

But the abutters' right "to appear * * * and be heard" on their entitlement to compensation for any damage

---

[1]Any person aggrieved by the council's award of damages on abandonment may, within 1 year after the making of the award, petition the Superior Court for the assessment of his damages by a jury. General Laws 1956 (1968 Reenactment) §24-6-4.

sustained as a result of an abandonment[2] is meaningless unless they receive adequate notice that the matter is pending, so that they can decide for themselves "whether to appear or default, acquiesce or contest." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). And when, as in this case, the abutters' names and addresses are either known to the council or readily ascertainable, notice by publication is constitutionally insufficient and due process requires some sort of direct, personal notice of the pendency of the hearing. *Schroeder* v. *City of New York*, 371 U.S. 208, 212-13, 83 S.Ct. 279, 282-83, 9 L.Ed.2d 255, 259-60 (1962); *Walker* v. *City of Hutchinson*, 352 U.S. 112, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178, 182 (1956); *Mullane* v. *Central Hanover Bank & Trust Co.*, *supra* at 318-19, 70 S.Ct. at 659-60, 94 L.Ed. at 875-76.

*John C. Quattrocchi*, for plaintiff.

*Ronald Glantz, John J. Partridge*, for defendant.

---

[2] In Rhode Island an owner of land abutting any part of an abandoned highway is entitled to be compensated therefore if his right of access is sufficiently diminished to deprive him of reasonable access to his property. *Saints Sahag & Mesrob Armenian Church* v. *Director of Pub. Works*, 116 R.I. 735, 742, 360 A.2d 534, 537 (1976).