[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Department of Administration. Jurisdiction in this Court is pursuant to R.I.G.L. 1956 (1988 Reenactment) § 42-35-15.
Case Travel-Facts
On August 16, 1989 after several hearings over a six month period, the adjudicator for the Department of Adjudication rejected St. Joseph Hospital's appeal and affirmed the Department of Health's denial of a Certificate of Need for cardiac catheterization service. St. Joseph Hospital (hereinafter St. Joseph) here requests that this Court reverse the decision of the adjudicator.
In December of 1987, St. Joseph and five other hospitals submitted applications for catheterization labs in response to a Request for Proposal to Develop Cardiac Catheterization Services (RFP) issued by the Department of Health. The RFP was issued pursuant to the completion of a study by the Cardiac Care Advisory Committee. This report recommended an expansion of cardiac catheterization labs from the existing capacity of 3.5 labs to six labs in 1990 and seven labs in 1992. All applications were referred by the Department of Health (Department) to the Health Services Council (Council), an advisory body to the Director of Health, which thereafter referred them to a Project Review Committee (Committee), a subcommittee of the full Health Service Council.
The Committee adopted a methodology which scored each proposal based upon its response to the factors and measures contained in the RFP. Such factors and measures included caseload standards, access resources, and quality issuance. At the May 26, 1988 meeting, the Committee, utilizing the adopted methodology, voted to approve catheterization labs for the three highest scoring proposals (R.I. Hospital, Miriam, and Roger Williams). After this first ranking, St. Joseph placed fourth. The Committee, at the same meeting, considered the possibility of using the 1992 target level of a total of seven catheterization labs. This gave St. Joseph, Kent, and Woonsocket a second chance to compete for the one additional lab. However, the Committee decided to defer action on the proposal to add one more lab pending a final presentation or last best offer by each of the three remaining applicants. The last-best offer enabled the applicants to submit any additional written documentation in support of their bid.
On June 9, 1988, after receiving the last-best offer proposals and scoring the results, the Committee heard oral presentations from the three remaining applicants. However, the Committee reversed its earlier position to adopt the 1992 target recommendation. Consequently, the three hospitals that had been given approval under the 1990 six-lab scenario were re-affirmed and since an additional lab was now removed from consideration, the Committee voted to deny the applications of St. Joseph, Kent and Woonsocket. However, prior to the decision not to pursue the 1992 target level, the last-best offers were analyzed and scored resulting in Kent being placed ahead of both St. Joseph and Woonsocket, thus moving up one spot from its original position.
The recommendations of the Committee were then sent to the Health Services Council. The Council accepted and approved the recommendation of the Committee concerning the applications by Rhode Island, Miriam, and Roger Williams. However, the Council in examining the Committee's recommendations questioned the Committee's decision not to chose the 1992 target level. The Committee' response was that in its discussion of the 1992 target level, it analyzed among other factors, the amount of equity the applicant could put into the lab. Upon consideration of these factors, the Committee concluded that the more conservative 1990 target level was the better choice.
However, after hearing presentations from the applicants, the Council decided to adopt the 1992 target level of seven labs, thus rejecting the Committee's recommendation not to do so. During the presentations, the Council heard testimony from Kent that its lab would be funded by 100 percent equity. St. Joseph, on the other hand, merely used the opportunity to criticize the ranking procedures implemented by the Committee. The Council, relying on Kent's testimony, Kent's top ranking after the last-best offer, and other factors, voted to approve the granting of a catheterization lab to Kent.
The actions of the Council were then approved by the Director of the Department of Health. St. Joseph requested administrative review of the decision. St. Joseph's appeal was rejected by the adjudicator, leading to the present appeal.
Appellate Review Pursuant to G.L. § 42-35-15
Pursuant to § 42-35-15, the Superior Court possesses appellate jurisdiction to review decisions of various state administrative agencies. Section 42-35-15 provides in pertinent part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In its review of an agency decision, the Superior Court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses or weight of the evidence concerning questions of fact. Costa v. Registry of MotorVehicles, 543 A.2d 1307 (R.I. 1988). Even where the court after reviewing the certified record and evidence might be inclined to view the evidence differently than did the agency, (Cahoone v.Board of Review, 104 R.I. 503, 506, 246 A.2d 213 (1968), it must uphold the agency decision if it finds any competent evidence upon which the agency decision rests. E. Grossman and Sons. Inc.v. Rocha, 118 R.I. 276, 373 A.2d 496 (1977). Alternatively, the court may vacate the agency decision if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in whole record. Thus the court will reverse factual finding of an administrative agency only when they are devoid of competent evidentiary support. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 270 (R.I. 1981).
THE ADJUDICATOR'S DECISION
St. Joseph in this appeal has raised the three arguments it presented to the adjudicator of the Department of Administration and one additional argument. The three arguments presented to the adjudicator concern the validity of the selection process, whereas the additional argument alleges an abuse of discretion by the adjudicator during that appeal.
The Selection Process
St. Joseph contends that the rules, regulations and statutory requirements, by implication, presume that none of the applicants for new health care services and/or equipment has established these services and/or equipment prior to the application for issuance of a Certificate of Need. This argument as noted by the adjudicator is unfounded. In reaching this conclusion, the adjudicator correctly referred to G.L. § 23-15-4, and Sections 3.37 and 8.11 of the Certificate of Need Regulations. Section 3.37 explicitly refers to "the potential need for development orexpansion of a particular institutional health service . . ." (emphasis added) in its definition of a Request For Proposed (RFP). Moreover, both Section 8.11 and G.L. § 23-15-4 (d) provide that the Health Services Council consider the relationship of the proposed services to existing health care services. These provisions clearly provide that applicants with existing facilities and/or services are not precluded from seeking a Certificate of Need.
Equal Protection
St. Joseph contends that both the original selection process and the last best offer round violated their equal protection rights, in that the evaluation processes were tailored to favor those hospitals with existing catheterization labs. In analyzing an equal protection issue, a rational basis standard will be used in situations not involving a suspect classification or a fundamental right. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Under the rational basis standard, the challenged rule or statute or classification will be upheld if it rationally relates to a legitimate government purpose.Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). Furthermore, the burden of showing that the classification has no rational relationship to the permissible government purpose is on the person challenging the law or classification.
Here, St. Joseph concedes that the state has a legitimate interest in regulating new health care facilities and equipment. However, St. Joseph contends that the original selection process and the last best offer bear no rational relation to this permissible government purpose, thus violating St. Joseph's equal protection rights under both the United States Constitution and the Rhode Island Constitution. St. Joseph argues that all the applicants should have been judged as if none had established catheterization labs and that the criteria and scoring methodology used by the Committee and Council unfairly favored those hospitals with programs already in place. St. Joseph further argues that all the participating hospitals should have had to undergo re-evaluation in the last best offer round, not just the three lowest scoring applicants.
St. Joseph correctly states that the Equal Protection Clause demands reasonableness in both administrative and legislative classifications. Rhode Island Affiliate, American CivilLiberties Union, Inc. v. Rhode Island Lottery Commission, 553 F. Supp. 752 (D.C.R.I. 1982). While the Equal Protection Clause requires that persons similarly situated receive like treatment, absolute perfection is not required. The classification must be fairly shaped and predicated upon a reasonable basis in light of the legitimate government interest to be protected. Rhode IslandChapter of National Women's Political Caucus, Inc. v. RhodeIsland Lottery Commission, 609 F. Supp. 1403 (D.C.R.I. 1985).
Here, the original selection process and the last best offer clearly bear a rational relation to the regulation of new health care facilities and equipment, a legitimate government interest. The adjudicator correctly noted that under the statutory requirements for a certificate of need, the "existence of similar services or equipment must be taken into account in determining need." (Adjudicator's decision p. 8). Thus, St. Joseph's contention that all applicants should have been judged as if none had established catheterization labs must fail. All six hospitals submitted different proposals providing different levels of care. The consideration of the proposals in light of the fact that certain applicants had existing catheterization services is fairly shaped and predicated upon a reasonable basis in light of the state's interest in the health care system.
In addition, the finding that the last best offer round did not violate St. Joseph's Equal Protection rights is correct. The adjudicator, upon review of the record before him, concluded that the last best offer evaluation process used the same criteria, scoring and individuals as the original process. In fact, St. Joseph received the same total score in both rounds. (Adjudicator's Decision p. 9). The implementation of the last best offer process is clearly rationally related to the decision to use the 1992 target level, which allowed for one more Certificate of Need.
Due Process
St. Joseph also contends that the scoring system used to rank the proposals was in violation of the Due Process Clause in that it was arbitrary and capricious. Specifically, St. Joseph alleges that the scorers did not apply any rational standard when assessing points for the six proposals. St. Joseph cites several examples of point disparity in the scoring process.
Due process is not a mechanical rule. It is a standard which must be decided by the facts of each case. D'Agostino v.Doorley, 375 A.2d 948, 118 R.I. 700 (1977). Furthermore, absent a suspect classification or a fundamental right, a challenged statute or government action need only be rationally related to a legitimate government concern. Whiting v. Town of Westerly, 743 F. Supp. 97 (D.R.I. 1990) affirmed 942 F.2d 18. Here, the adjudicator after reviewing the scoring, concluded that the examples provided by St. Joseph show a disparity of only one point. Such a disparity, in and of itself, does not support a finding that the scoring was performed arbitrarily. Furthermore, St. Joseph failed to provide any other evidence which might be indicative of arbitrary scoring. This Court is satisfied that there was sufficient competent evidence upon which the adjudicator based his decision.
St. Joseph also contends that the selection of Kent County as the fourth hospital to receive a certificate of need was done in an arbitrary manner. To support this position, St. Joseph relies on statements made by the Health Services Council at the June 28, 1988 meeting. St. Joseph alleges that the record of this meeting shows that Kent County's proposal won out because the Health Services Council members felt Kent County had done everything that the Council had asked in the past, had been denied a cardiac catheterization laboratory in the past, and that Kent County was favorably situated in this circumstance.
The adjudicator found that St. Joseph failed to show how it was treated in an arbitrary manner, and he further noted:
 the record shows that St. Joseph Hospital failed to substantially change its position during the last best offer phase. Rather, the June 28, 1988 council minutes indicate that appellant [St. Joseph] used the opportunity to address the Council to question the last best offer method rather than offer any substantial change in its proposal. (Adjudicator's decision p. 11).
Kent County, on the other hand, substantially changed its position during the last best offer phase. Although not specifically alluded to by the adjudicator, a cursory review of cost and financing comparisons of the applicants clearly illustrates Kent's changes. One particular point worth noting concerns the debt to equity ratio. In the original proposal, Kent County's equity contribution was only 29% as opposed to 71% debt. However, in the last best offer, Kent County increased its equity contribution from 29% to 100% thus reducing its debt from to 71% to zero.
These significant changes by Kent County and the lack of changes by St. Joseph clearly provided the Committee and Council with objective information upon which to base their decisions. Consequently, the conclusion reached by the adjudicator in his review of these actions is supported by competent evidence. Furthermore, his finding that such actions were not arbitrary and capricious is likewise correct.
Exclusion of the Kent County File and June 28, 1988 Hearing.
Lastly, St. Joseph contends that the Adjudicator's Decision to exclude the Kent County file and the June 28, 1988 Health Services Council hearing from consideration during its appeal was clearly erroneous and constituted an error of law as well as an abuse of discretion. St. Joseph's attempt to introduce these documents at the hearing before the adjudicator was objected to by the Department of Health, which claimed the documents were outside the appellate record. St. Joseph argues that the awarding of the Certificates of Need was done pursuant to an integrated process of competition for a limited number of certificates, thereby requiring consideration of the documents in question.
Without deciding what constitutes the appellate record in this case, this Court finds that adjudicator's decision not to consider these documents not to be reversible error or abuse of discretion. This Court finds that the evidence and references to Kent County's improved equity position coupled with St. Joseph's failure to improve their position was sufficient competent evidence on which the adjudicator based his decision denying St. Joseph's appeal.
For the reasons cited the adjudicator's decision dated August 16, 1989, affirming the Department of Health's denial of a Certificate of Need for cardiac catheterization service for St. Joseph Hospital, is affirmed.
An order shall be presented for entry within two weeks of the filing of this decision.