DECISION
The issue before the Court concerns the continued supervision of George Weeks by the Department of Mental Health, Retardation and Hospitals pursuant to Chapter 5.3 Title 30.1 entitled "Incompetency to Stand Trial and Criminally Insane Persons." On March 7, 1988 the defendant was found not guilty by reason of insanity of two counts of assault with a dangerous weapon, a firearm, in violation of § 11-5-2 of the General Laws and one count of carrying a pistol without a license in violation of §11-47-8.
The defendant was committed to the custody of the Director of the Department of Mental Health, Retardation and Hospitals (Director) pursuant to Rhode Island's forensic statute, §40.1-5.3-4(b). The Director thereupon reported to the Court his opinion that, by reason of his mental disability the defendant's unsupervised presence in the community would create a likelihood of serious harm. The Court found the defendant to be dangerous and committed him to the custody of the Director for care and treatment. This forensic commitment continues to this day. In accordance with § 40.1-5.3-4(f), the Director has petitioned for review of Mr. Weeks' condition at six-month intervals. While the Director has never changed his opinion that Mr. Weeks' unsupervised presence will create a likelihood of serious harm, Mr. Weeks has made significant progress in his treatment. With court approval, he was transitioned from the forensic unit to a civil ward at MHRH, then to a group home operated by MHRH. Mr. Weeks now resides, with court approval, in a semi-supervised apartment operated by Newport County Mental Health Center. He continues to receive medication maintenance and case management services from Newport County Mental Health Center.
In December 1994, when the Director filed a petition for semi-annual review, Mr. Weeks also petitioned, pursuant to §40.1-5.3-4(g) for a review of his condition. This petition was filed on behalf of Mr. Weeks by the State's Mental Health Advocate. During a conference concerning this matter and at argument, Mr. Cosper, the attorney for Mr. Weeks, pressed an objection to any further commitment of his client to the custody of the Director.
He based this objection on constitutional grounds and suggested his client cannot constitutionally be continued on commitment status beyond the time when the maximum term of a sentence on his criminal charges would expire.
On April 7, 1995 a hearing was held during which both sides presented expert testimony concerning Mr. Weeks' mental disability, his long term prognosis and likelihood of dangerousness. Dr. Farrel Klein testified on behalf of the Director. Dr. Klein serves as the Medical Director of Newport County Mental Health Center and has treated Mr. Weeks since 1992.
It is undisputed that Mr. Weeks suffers from paranoid schizophrenia. According to his medical history, the first episode of delusion occurred in 1968 and culminated with a hospitalization at Chapin Hospital and the Veteran Administration Hospital in Brockton, Massachusetts. The next episode occurred in 1985 and gave rise to the charges in this case. According to the information package, Mr. Weeks was involved in a fall from his bicycle on Post Road in North Kingstown. He was being assisted by a North Kingstown Police Officer when he ran away. He was chased on foot and pulled a loaded handgun from his waistband and pointed it at the officers. He subsequently surrendered to a police lieutenant after a fifteen minute dialogue.
Dr. Klein testified the patient is presently in remission and is maintained on antipsychotic medication, specifically, Holdol Decanoate, a long-acting ingestible antipsychotic medication. This medication is administered by the Newport County Mental Health Mobile Treatment team. It is equally undisputed that defendant objects to the continued use of medication to control his illness. According to Dr. Klein the patient has no insight into having a mental illness, he is suspicious of others and his affect is blunt or flat. His emotional responses are decreased. Dr. Klein testified this is a lifelong illness for which there is no known cure. The client is seen by Dr. Klein every three months. Mr. Weeks has requested and received a reduction in the dose of medication and is presently receiving the lowest dose possible.
In Dr. Klein's opinion, Mr. Weeks has no understanding he has a mental illness, denies that he needs medication and fully intends to discontinue the medication if his commitment is discontinued. It is Dr. Klein's medical judgment that if the patient discontinues the medication the symptoms will reappear and that he will certainly suffer another psychotic episode. He has a serious concern that since Mr. Weeks has become violent during each of his documented episodes and has used a firearm in the past, there exist a clear danger he will become violent in the future. In Dr. Klein's opinion a termination of medication is simply not worth the risk presented by this individual, which risk, in his opinion is much greater than that presented by other mentally ill people.
Dr. David Kass, a board certified psychiatrist testified on behalf of Mr. Weeks. Dr. Kass examined the patient and reviewed his hospital records. According to Dr. Kass, Mr. Weeks has some insight into the fact he has heard voices in the past and heard voices at the time of the incident. Dr. Kass also feels the patient will recognize the onset of another episode for which he states, there is high probability of reoccurrence, about 80 — 90 percent
Dr. Kass suggests that Mr. Weeks would be continued on Holdol Decanoate on a monthly basis if he were discharged. Dr. Kass' solution to, Mr. Weeks' refusal to take his medication is to simply ask him to take his medication, if he refuses, then to attempt to certify him, presumably under § 40.1-5-8, Civil Court Certification. When asked about the level of risk of harm Mr. Weeks presented, Dr. Kass admitted that Mr. Weeks had had problems with his neighbors and resorted to firearms which certainly increased the risk of harm this client presented. However, Dr. Kass stated that this is a risk that "we all accept in order to keep these patients in the community." The Court disagrees.
Mr. Weeks testified on his own behalf. He acknowledged he had suffered from a mental illness but felt it was presently in remission.
According to Mr. Weeks his illness first manifested itself when he was serving in the military in Vietnam, he was frustrated about the extent of the U.S. commitment, suffered from a loss of sleep and was "immediately" hospitalized. He stated he later figured out the problem was the "haste of the war." He went "from one hospital to another" in both Vietnam and the U.S. After about four months he was well enough to go home. He began drinking after his discharge and had personal problems at home. His father felt he needed help and he was admitted to Chapin Hospital for his "nerves." He denies he was mentally ill at this time. He testified that from Chapin Hospital he was transferred to the Brockton VA Hospital and was placed on medication. He denies hearing voices at that time. He stated that from his discharge from Brockton in 1968 or 1969 he had no episodes of hearing voices for sixteen years until 1985. According to the state, on March 6, 1985, three days before the incident in this case, Mr. Weeks was allegedly having some kind of a problem with a neighbor and was firing a weapon into a garage. He was arrested and subsequently released. He was arrested again on March 9, 1995 following the incident giving rise to this investigation.
Mr. Weeks continues to feel he is in remission and does not need to remain on medication. He testified that he would not take medication if discharged by the Court unless he began to experience symptoms. Whether or not these symptoms manifest themselves in a manner recognizable to this individual has not been established.
Persons found not guilty by reason of insanity who are found to be dangerous are committed to the custody of the Director pursuant to § 40.1-5.3-4 and remain so committed until discharged by order of the Court authorizing his or her release. While six month reviews of the person's mental status are mandated, release may not be ordered until the Director no longer believes that the unsupervised presence of the person in the community will create a likelihood of serious harm. That finding has not occurred in this case. The Director of the Department of Menal Health, Retardation and Hospitals clearly believes that Mr. Weeks is not a candidate for release. The Director, through the testimony of Dr. Klein has established that Mr. Weeks' unsupervised presence in the community poses a substantial risk of serious harm. The Court agrees with this opinion and so finds. Thus, this matter must be continued for review and hearing six (6) months from the date of this decision.
Mr. Weeks also challenges his forensic commitment on constitutional grounds. Mr. Weeks suggests that this commitment cannot constitutionally extend beyond the maximum term of imprisonment for the offenses with which he is charged. While the statute, unlike § 40.1-5.3-3 which pertains to persons not competent to stand trial, makes no provisions for the expiration of the term of commitment for an insanity acquitted, Mr. Weeks suggests the Court should impose such a limitation on constitutional due process grounds under Article I § 10 of the Rhode Island Constitution. Mr. Weeks concedes that no such limitation of the term of commitment is recognized under federal constitutional law. Jones v. United States, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed 2d 694 (1983).
Contrary to Mr. Weeks' assertion, he is simply not subject to an indefinite commitment. This Court must review his status, on a semi-annual basis and, in order to continue his commitment the Court must find that his unsupervised presence in the community will create a substantial likelihood of serious harm because of his mental disability. This is simply not an indefinite commitment. Indeed, Mr. Weeks has made great progress in his recovery and has moved from a locked facility to an unsupervised living arrangement in the community. It is undisputed that this progress is attributed at least in part to his continued use of antipsychotic medication. This patient simply wishes to be free from the rather minimal side effects of that medication. The risk of relapse without the use of medication is exceedingly high according to all concerned. This is an individual whose last relapse involved the use of a firearm in two potentially dangerous situations. The risks associated with this type of relapse are simply unacceptable.
Persons found not guilty by reason of insanity are subject to different commitment procedures Jones v. United States, supra. It is obvious that such a finding "establishes two facts (i) the defendant committed an act that constitutes a criminal offense and (ii) he committed the act because of mental illness Jones v.United States, 77 L.Ed 2d at 705. These facts alone are sufficient to support a finding of dangerousness, a finding which must be reviewed by the Court every six months thereafter or at anytime upon the petition of the insanity acquittee.
Such a commitment is not designed to punish the person but to provide him with treatment for his mental illness and to protect him and the community from any potential danger his unsupervised release presents. Release is mandatory when and if the patient recovers. Here, as in Jones, the Legislature has decided to leave the length of commitment "indeterminate, subject to periodic review of the patient's suitability for release," 77 L.Ed 2d at 708. The courts have long recognized that due process protection is flexible and calls for such procedural protections as the particular situation demands. Jones, supra; Barber v.Exeter-West Greenwich School Committee, 418 A.2d 13 R.I. (1980);D'Agostino v. Donley, 118 R.I. 700, 375 A.2d 948 (1977).
Weeks' contention that the Rhode Island Constitution creates broader due process protections is without merit. he correctly asserts that prior to the 1986 Constitutional Convention Article I, Section 2 contained no specific equal protection or due process guarantees. In 1986 the Rhode Island Constitution was amended by the voters at the general election. Article 1, Section 2 was supplemented with the following language:
 No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws.
This language is clearly parallel to the language of the Fourteenth Amendment to the United States Constitution. Due process like equal protection may be recent additions to the Rhode Island Constitution but have been long available and applicable to the citizens of this state through the Fourteenth Amendment. See, Kleczek v. Rhode Island Interscholastic League,Inc., 612 A.2d 734 (R.I. 1992); Iannacone v. Iannacone,121 R.I. 46, 394 A.2d 1105 (1978); Green v. Edwards, 31 R.I. 1, 77 A 188 (1910); Ex Parte Audet, 38 R.I. 43, 94 A 678 (1915).
Weeks relies on the comments contained in the Report of theCitizens Right Committee on Individual Rights from the 1986 Constitutional Convention in support of his argument that Article 1 § 2 affords him greater due process protections than the Federal Constitution. Weeks implicitly suggests the Court should fashion a judicially created limitation on the period of commitment based on Article 1 § 2 of the State's Constitution. Mr. Weeks' reliance is misplaced. These comments reflect a concern on the part of the committee members and witnesses topreserve the protections afforded by the Fourteenth Amendment not expand them. These comments reflect a real concern about the conservative approach to constitutional rights recently demonstrated by the federal courts. Indeed, the comments to resolution 86-00032 which adopted the amendment state:
 One advantage of including the due process are equal protection clauses into the State Constitution would be to protect the citizens of the state if the federal judiciary adopted a narrow interpretation of the 14th amendment.
 R.I. Const. Art 1, § 2 (annotated edition), Committee Report p. 6.
Thus, the Court is without authority to adopt a broader application of the due process clause than its federal counterpart and the Court declines to do so.
Finally, Weeks maintains that the indeterminate commitment provision of the statute discourage mentally ill defendants from utilizing the insanity defense. He suggests that public policy considerations ought to require the Court to fashion a period of limitation to the term of commitment. No evidence was presented with respect to this contention. All criminal defendants must be competent to stand trial. This means they are able to assist in the preparation of a defense. A decision to utilize the insanity defense is a decision a defendant makes with the advice and assistance of his attorney. A person found not guilty by reason of insanity is entitled to treatment and care. That is exactly what has occurred in this case. The suggestion that Mr. Weeks should have served time in prison instead of the instant commitment is without merit.
For the reasons stated herein the motion of Mr. Weeks to be released from the custody of the Director of Mental Health, Retardation and Hospitals is denied.
The Court finds that, pursuant to R.I.G.L. § 40.1-5.3-4(h) the Court finds by clear and convincing evidence that by reason of his mental illness the unsupervised presence of Mr. Weeks in the community will lead to a relapse of his psychotic episodes and will create a likelihood of serious harm to himself and the community.
Accordingly, the Court orders Mr. Weeks to remain in the custody of the Director. This matter shall be reviewed again in six months.
Counsel shall prepare an order consistent with this decision.